IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 01-30935
consolidated with
No. 01-31405

TERRY ZAFFUTO; SUSAN ZAFFUTO,

Plaintiffs - Appellees-Cross-Appellants

versus

CITY OF HAMMOND; ET AL,

Defendants

CITY OF HAMMOND,

Defendants - Appellants-Cross-Appellees;

KENNY CORKERN,

Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Louisiana

October 16, 2002

Before REAVLEY, BARKSDALE, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Appellants, a police supervisor and his municipal employer, challenge a jury's verdict that secretly

recording and disclosing a personal phone call from appellee police officer to his wife violated the

1

constitutional right to privacy and constituted an invasion-of-privacy tort under Louisiana law. On cross-appeal, the officer and his wife challenge the district court's adverse summary judgment ruling on their Title VII retaliation claim. We agree with the district court's disposition of the Title VII claim. However, because one of the two possible theories under the constitutional right to privacy was improperly submitted to the jury, and because the state invasion-of-privacy tort can only support the compensatory damages portion of the judgment, a new trial on punitive damages must be ordered. We affirm in part, and reverse and remand in part.

## I. FACTS AND PROCEEDINGS

All calls on certain phone lines in the Hammond, Louisiana police department are automatically recorded onto a central taping system, for various law-enforcement purposes.[1] To record a particular conversation, an officer must locate the conversation from the master tape and then manually record the conversation by placing a hand-held tape recorder next to the speaker.

Sometime in 1997, then-sergeant Terry Zaffuto placed a call from his private office to his wife Susan, expressing his approval of a controversial department re-structuring that would adversely affect some of his superiors. Susan remarked, in substance, that "those SOBs will finally get what they deserve." Two police officers, Dennis Pevey and Paul Wade Miller, testified at trial that Assistant Police Chief Kenneth Corkern played them a tape recording of officer Zaffuto's call to his wife. Corkern denied ever hearing or playing the tape.

In September 1999, Zaffuto learned from Miller that his conversation had been recorded, and that Corkern had played the tape for Miller and Pevey. Around the same time, Zaffuto was listed as a

---

[1]For instance, the taping system allows the department to investigate internal wrongdoing, and to evaluate charges that the department does not promptly respond to citizen complaints.

witness on behalf of a co-worker's sex discrimination lawsuit against the department, though he never actually testified. The next month, Zaffuto was suspended 240 hours for allegedly failing to accurately report that another officer had assaulted a pre-trial detainee. Zaffuto says the suspension was retaliation for his testimony in the sex discrimination case.

Zaffuto has since been promoted to lieutenant and given a pay raise.

Zaffuto and his wife filed a complaint March 27, 2000 against Corkern, Police Chief Roddy Devall,[2] and the City of Hammond, alleging that defendants: (1) unlawfully retaliated against him, in violation of Title VII, for agreeing to testify on behalf of a co-worker's sex discrimination lawsuit against the police department; (2) unlawfully disclosed one of Zaffuto's private telephone conversations in violation of the constitutional right to privacy; (3) committed an invasion-of-privacy tort under Louisiana law in connection with the disclosed phone call; and (4) caused Susan Zaffuto to suffer a loss of consortium.

On April 3, 2001, the district court granted defendants' motion for summary judgment on plaintiffs' Title VII claim because the alleged retaliation Zaffuto suffered, a 240-hour suspension, did not amount to an "ultimate employment decision" under *Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir. 1997). The district court denied defendants' motion for summary judgment on plaintiffs' constitutional right to privacy claim.

After hearing all the testimony April 9, 2001, a jury returned a verdict April 10 finding that Corkern violated the Zaffutos' constitutional rights, without those rights being specified, and that Corkern was not entitled to qualified immunity. The jury also found Corkern liable to the Zaffutos'

---

[2]At the close of plaintiffs' case, they conceded to defendants' motion that Devall be granted a judgment as a matter of law. *See* FED. R. CIV. P. 50(a). Devall is no longer part of this lawsuit or appeal.

for a state law invasion-of-privacy tort. The jury awarded the Zaffutos $2 in compensatory damages ($1 each), and $10,000 in punitive damages, but did not allocate those damages between the federal or state claims. The jury found the City not liable for violating the Zaffutos' constitutional right to privacy because the City did not have a custom or policy of unlawfully taping and disseminating officer phone calls.

On July 25, 2001 the district court granted the Zaffutos' unopposed motion to alter the judgment to find the City liable for the state invasion-of-privacy tort, under a respondeat superior theory, for the $2 in compensatory damages. In the same memorandum, the district court denied defendants' renewed motion for a judgment as a matter of law because the evidence was sufficient to support the verdict, and because the constitutional rights Corkern violated were clearly established at the time of the violation, precluding his qualified immunity defense.

## II. DISCUSSION

A. Sufficiency of the evidence and the constitutional right to privacy

Corkern asserts that he could not, as a matter of law, have violated the Zaffutos' constitutional privacy rights. When a district court denies a motion for a post-verdict judgment as a matter of law, we review its determinations of law de novo. *See Heller Financial, Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 523 (5th Cir. 1996). For factual findings, "[t]his Court grants great deference to a jury's verdict and will reverse only if, when viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion." *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 497 (5th Cir. 2002) (citation omitted).

Section 1983 allows a citizen to sue anyone who, "under color of" state law or custom, violates

4

the citizen's federal rights. 42 U.S.C. § 1983.

1. The Fourth Amendment and wire communications

The first of two constitutional privacy rights at issue is the Fourth Amendment's protection of privacy in wire communications. *See Berger v. New York*, 388 U.S. 41 (1967); *Katz v. United States*, 389 U.S. 347 (1967). The Supreme Court held in *Katz* that the government cannot record private conversations without a valid warrant or proper authorization when the speaker has a reasonable expectation of privacy. 389 U.S. at 351-52. To establish a Fourth Amendment privacy claim, a plaintiff

> must demonstrate both that [he] had an actual expectation of privacy, based on a showing that [he] sought to preserve something as private (which is called a subjective expectation of privacy), and that [his] expectation of privacy is one that society recognizes as reasonable (which we call an objective expectation of privacy).

*See Kee v. City of Rowlett*, 247 F.3d 206, 212 (5th Cir. 2001). In *Kee*, this Court held that conversations taking place near a murder victim's gravesite, where police had placed a secret listening device, were not protected. *Id.* at 217-18.

Corkern argues that he cannot be liable under the Fourth Amendment because there was insufficient evidence that he seized the recording. "The Fourth Amendment governs not only the seizure of tangible items, but extends as well to the recording of oral statements overheard without any technical trespass under local property law." *Katz*, 389 U.S. at 353 (citation and internal quotations omitted).

We conclude that the jury had sufficient testimony to infer that Corkern recorded the Zaffutos' conversation in violation of the Fourth Amendment. Nobody testified to actually "pulling" the Zaffuto conversation from the master tape, but two officers testified that Corkern played the tape for

them. The jury could reasonably infer from that testimony that Corkern either pulled it himself, or ordered that it be pulled from the master tape.

Corkern also argues that the existence of Louisiana's public records law and a department policy that calls would be taped suggests that it would not be objectively reasonable for Zaffuto to expect privacy in making a perso nal phone call from work. "[T]he question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *See O'Connor v. Ortega*, 480 U.S. 709, 718 (1987) (plurality).

Officers Zaffuto, Peavy and Miller testified at trial that, in 1997, they understood the policy to mean that only calls coming into the communications room (where outside citizens would call) were being recorded, not calls from private offices. A reasonable juror could conclude, on this evidence, that Zaffuto expected that his call to his wife would be private, and that that expectation was objectively reasonable.[3]

## 2. The Fourteenth Amendment and confidentiality

The second constitutional right at issue is the Fourteenth Amendment's protection of the "individual interest in avoiding disclosure of personal matters," *see Whalen v. Roe*, 429 U.S. 589, 599 (1977), also known as the "confidentiality branch" of substantive due process privacy rights.[4] The

---

[3]Because the right to privacy in personal phone calls has long been established, *see Katz*, 389 U.S. at 354-360, Corkern is not entitled to qualified immunity.

[4]The other branch, the autonomy branch, involves the "interest in independence in making certain kinds of important decisions[,]" such as those relating to marriage, procreation, and education. *Whalen*, 429 U.S. at 599-600.

Corkern correctly points out that nothing in the plaintiffs' filings makes clear that they intended to pursue a separate claim under the Fourteenth Amendment confidentiality branch, in addition to their Fourth Amendment claim. The complaint speaks broadly of the constitutional right to privacy, without mentioning a specific amendment. The Zaffutos' memorandum in opposition to summary judgment only mentions the Fourth Amendment, and their proposed jury

following two cases are illustrative.

In *Fadjo v. Coon*, plaintiff Fadjo alleged that the state of Florida, as part of an investigation into the mysterious disappearance of one Kenneth Rawdin, used its subpoena power to gather information "concerning 'the most private details of [Fadjo's] life.'" 633 F.2d 1172, 1174 (5th Cir. Unit B Jan. 1981). Fadjo was the beneficiary of a life insurance policy on Rawdin, and Florida officials allegedly disclosed the private information to his insurance companies. *Id*. This Court held that Fadjo's complaint stated a federal cause of action for an unconstitutional invasion of privacy. *Id*. at 1176-77.

In *American Civil Liberties Union v. Mississippi*, this Court held that, in dismantling the controversial Mississippi State Sovereignty Commission, the state of Mississippi could not publicly disseminate the Commission's files: "[C]omplete and unfettered disclosure of the files does not give appropriate protection to the constitutional privacy interests of various persons in not having government-gathered sensitive personal information about them released." 911 F.2d 1066, 1069 (5th Cir. 1990).

There is no Fifth Circuit authority on what types of disclosures are personal enough to trigger the protection of the confidentiality branch, and, as the Third Circuit notes,"the contours of the confidentiality branch are murky." *See Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 206 (3d Cir.

---

instructions do not include anything relating to the Fourteenth Amendment confidentiality branch issue. The prohibition against government dissemination of private information, once thought to reside in the "shadows cast by various provisions," is found in the "Fourteenth Amendment's concept of personal liberty." *See Whalen*, 429 U.S. at 598 n.23. And, as explained above, there is separate Fourth Amendment jurisprudence relating to intercepting wire communications.

Nevertheless, we conclude that the Fourteenth Amendment issue is properly before us because the Zaffutos' complaint reads broadly enough to cover both theories (neither amendment is mentioned by name). The jury was instructed on both the Fourth and the Fourteenth Amendment theories, and there is no evidence in the record that Corkern objected to those instructions.

1991).

Corkern argues that the Zaffutos' conversation about a controversial re-structuring in the police department was not a discussion of "personal matters," *Whalen* 429 U.S. at 599, sufficient to trigger the privacy protections of the confidentiality branch. He distinguishes this case from other controlling confidentiality cases, which involved much more private facts. *See, e.g., Whalen*, 429 U.S. at 600 (medical records); *ACLU*, 911 F.2d at 1070 ("instances of (often unsubstantiated) allegations of homosexuality, child molestation, illegitimate births, and sexual promiscuity as well as reports of financial improprieties, drug abuse, and extreme political and religious views"); *Fadjo*, 622 F.2d at 1174 ("the most private details of [Fadjo's] life" (internal quotations omitted)); *Plante v. Gonzalez*, 575 F.2d 1119, 1121 (5th Cir. 1978) (detailed personal financial information).

Although this Court has never explicitly determined what types of disclosures are "personal" enough to create a constitutional cause of action, other courts have clearly been limiting the scope of confidentiality branch actions. In *Davis III v. Bucher*, a corrections officer showed nude photos of an inmate's wife to at least two other inmates, but the Ninth Circuit held that "[t]he mere fact that [the officer] was clothed in official garb cannot transform his act into one of constitutional significance." 823 F.2d 718, 720 (9th Cir. 1988). The court said that the case presented "two isolated instances of poor judgment," and that "elevating them to constitutional dimension would tend to trivialize the Fourteenth Amendment by making it a magnet for all claims involving personal information, state officers, and unfortunate indignities." *Id*. at 720-21. The court distinguished *Fadjo* because, in that case, "the state's investigator flagrantly breached a pledge of confidentiality, which had been instrumental in obtaining the personal information." *Id*. at 721.

In *Alexander v. Peffer*, a city official disclosed on a talk show that appellant had unsuccessfully

8

applied for a position as a police officer, but the Eighth Circuit held that the information was not personal enough, nor did it involve "the type of governmental abuse," to "demand[] a constitutional response." 993 F.2d 1348, 1350-51 (8th Cir. 1993). The court, following signals from the Supreme Court, was reluctant to expand substantive due process rights "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id*. at 1350 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)); *see also Wade v. Goodwin*, 843 F.2d 1150, 1153 (8th Cir. 1988) ("The constitutional right to privacy is generally limited to only the most intimate aspects of human affairs.").

The disclosure in this case, though deliberate, did not reveal the type of intimate facts to constitute a constitutional violation. The substance of the conversation revealed only that Zaffuto disliked some of his bosses. We agree with the cases from other courts of appeals which hold that *de minimis* disclosures cannot be the basis of liability under the Fourteenth Amendment's confidentiality branch and § 1983.

B. Invasion-of-privacy tort

Federal cases limiting the scope of the confidentiality branch suggest that the proper remedy for less serious privacy violations is state tort law. *See Alexander*, 993 F.2d at 1350 (describing cause of action as "a possible state tort"); *Davis III*, 853 F.2d at 721 ("[Plaintiffs'] remedy, if any, lies in the state courts."); *Scheetz*, 946 F.2d at 206 ("[T]he question of whether a federal constitutional right to privacy has been violated is a distinct question from whether... a state common law right to privacy has been violated.").

Louisiana law recognizes a cause of action for unreasonable disclosure of embarrassing private facts where "defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy

9

interest." *See Daly v. Reed*, 669 So.2d 1293, 1294 (La. App. 4th Cir. 1996). "To be actionable, it is not necessary that there be malicious intent on the part of the defendant; rather the reasonableness of the defendant's conduct in a breach of privacy action is determined by balancing the plaintiff's interest in protecting his privacy from serious invasions with the defendant's interest in pursuing his course of conduct." *Id.*

Considering that Corkern had no legitimate interest in recording and disseminating the private conversation— his only interest was apparently to embarrass Zaffuto and curry favor with Miller and Pevey— it was not unreasonable for the jury to have found Corkern liable.

C. The new trial

The jury's verdict form (1) finds that Corkern violated the Zaffutos' "constitutional rights," without specifying which of the two theories prevailed; (2) finds Corkern liable for an invasion-of-privacy tort; and (3) awards damages without reference to any particular theory.

We affirm only the award of $2 in compensatory damages. We need not remand for a new trial on compensatory damages because the measure of compensatory damages under all theories arises from the same injuries, and because the properly-submitted state claim forms an independent basis to support that award.[5]

However, the jury's finding on the state law claim cannot support the punitive damages portion of the judgment because punitive damages are not allowed under Louisiana law in absence of a specific statutory provision. *See Fowler v. Western Union Telegraph Co.*, 357 So.2d 1305, 1309 (La.

---

[5]On appeal, the City argues for the first time that they are not liable for the compensatory damages under Louisiana's vicarious liability doctrine. Significantly, the City offers no reason why they never made those arguments to the district court. The issue has been forfeited and will not be considered on appeal. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 561-62 (5th Cir. 2001)

App. 3d Cir. 1978). The jury was instructed that they could only award punitive damages on the federal constitutional claim.

Because we cannot know whether the erroneously-submitted Fourteenth Amendment claim or the properly-submitted Fourth Amendment claim formed the basis for the jury's punitive damages award, a new trial is required on punitive damages. *See Crist v. Dickson Welding*, 957 F.2d 1281, 1286 (5th Cir. 1992) ("When two or more claims are submitted to a jury in a single interrogatory, a new trial may be required if one of the claims was submitted erroneously, because 'there is no way to know that the invalid claim ... was not the sole basis for the verdict.' " (internal quotation and citation omitted)).

D. Title VII retaliation claim

We review the district court's summary judgment determination de novo, applying the same standard as the district court. *See Medine v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). We must view all evidence and all factual inferences in the light most favorable to the Zaffutos, the parties opposing the motion. *See Price v. Federal Exp. Corp.*, 283 F.3d 715, 719 (5th Cir. 2002). If the party opposing the motion is unable to prove that there is at least a genuine issue with respect to a material fact which he would have to prove at trial to prevail or that the movant is not entitled to a judgment as a matter of law, the motion must be granted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiff in a Title VII retaliation claim[6] must prove "(1) that he engaged in activity protected by

---

[6]*See* 42 U.S.C. § 2000e-3(a).

Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001) (quoting *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001)). The district court granted defendants summary judgment on the narrow ground that the alleged retaliation did not amount to an "adverse employment action."

The Fifth Circuit requires that an "adverse employment action" be an "ultimate employment decision[]... such as hiring, granting leave, discharging, promoting, [or] compensating." *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997) (quoting *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995)) (alteration added). In *Mattern*, the Court held that "[h]ostility from fellow employees, having tools stolen and resulting anxiety, without more, do not constitute ultimate employment decisions." *Id*. The Court noted that it would be "unwarranted" to expand Title VII's retaliation prohibition to "events such as disciplinary filings, supervisor's reprimands and even poor performance by the employee— anything which might jeopardize employment in the future." *Id*. at 708.

The courts of appeal are split on this issue. The Fifth Circuit and the Eighth Circuit have adopted the "ultimate employment decision" standard. *See Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997).[7] Every other circuit to address the issue has held that employment decisions falling short of ultimate employment decisions may suffice. *See Von Gunten v. Maryland*, 243 F.3d 858, 866 n.4 (4th Cir. 2001) (collecting cases); *Wideman v. Wal-Mart Stores*, 141 F.3d 1453, 1456 (11th Cir.

---

[7]A Fourth Circuit panel noted "that while the Eight Circuit has ostensibly adopted the 'ultimate employment decision' standard, it has consistently applied a broader standard." *Von Gunten v. Maryland*, 243 F.3d 858, 864 (4th Cir. 2001) (citing *Manning v. Metropolitan Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir. 1997) and *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997)).

1998) (same).

Post-*Mattern* cases in this circuit provide only data points, from which it is difficult to discern a more specific conception of "ultimate employment action." For instance, In *Mota v. Univ. of Texas Houston Health Science*, this Court held that four actions, each taken alone, constituted adverse employment action: (1) discontinuing an employee's annual $2500 stipend; (2) denying his request for paid leave; (3) denying his request to extend unpaid leave; and (4) termination. 261 F.3d 512, 521-23 (5th Cir. 2001). In *Fierros*, this Court held that denial of a pay raise may constitute an adverse employment action. 274 F.3d at 193.

Zaffuto argues that he suffered retaliation because he was suspended for 240 hours for failing to report an incident in which another officer assaulted a pre-trial detainee (Zaffuto says this explanation is pretext).[8] Zaffuto emphasizes that the suspension directly affected his compensation, and he relies upon the following language from a post-*Mattern* Supreme Court sexual harassment case:

> A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.... A tangible employment action in most cases inflicts *direct economic harm*.

*Burlington Industries v. Ellerth*, 524 U.S. 742, 761-62 (1998) (emphasis added). In *Burlington*, the Supreme Court held that an employer may be vicariously liable for an employee's sexual harassment claim, even where a "tangible employment action" did *not* occur. *Id*. at 765-66. The Fifth Circuit has expressly declined to decide whether the sexual harassment "tangible employment action" standard lowers the bar on what is an "ultimate employment action" for retaliation purposes. *See Fierros*, 274

---

[8]Zaffuto also claims he was denied the opportunity to be the acting shift lieutenant while his supervisor was on vacation. That denial is far too minor to constitute an ultimate employment action.

13

F.3d at 193 n.3. We need not decide that issue for the present case.

Zaffuto's suspension clearly affected the terms of his employment during the suspension, and it is arguably more severe than denying an employee paid leave, or an extension in unpaid leave, as in *Mota*. 261 F.3d at 521. On the other hand, the plaintiff in *Mota* was denied six months of leave, and ultimately fired, *id.*, whereas Zaffuto was ultimately promoted to lieutenant and given a raise.

We decline to decide whether a 240-hour suspension is an adverse employment decision because the record, more straightforwardly, fails to support another crucial element of Zaffuto's claim: that there is a causal relation between the protected activity and the alleged retaliation. The district court did not decide the issue, but because summary judgment requires de novo review, this Court may affirm on an alternate ground that was properly raised in the district court.

The record contains nothing connecting the allegedly protected activity[9] and the alleged retaliation, save for the fact that they both occurred in the fall of 1999. In fact, the record shows that the events giving rise to Zaffuto's suspension, and the investigative fact finding, occurred before he was identified as a witness in the sexual harassment case. Zaffuto admitted in his deposition that he could not say whether the suspension was connected to his testimony. In absence of any evidence connecting Zaffuto's being identified as a witness and his suspension, we conclude that Zaffuto has failed to raise a genuine issue of material fact as to the issue of causation.

### III. CONCLUSION

In sum, we affirm the district court's order with respect to compensatory damages, and affirm the district court's rejection of appellants' Title VII claim. We vacate the punitive damages award and

---

[9]We also need not decide whether being identified as a witness in a sexual discrimination lawsuit, without actually testifying, constitutes protected activity.

remand for a new trial on whether officer Corkern is liable for punitive damages for violating appellants' Fourth Amendment rights.