United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 30, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60232
Summary Calendar

_____

JACQUELINE HARPER,

Plaintiff - Appellant,

v.

CITY OF JACKSON MUNICIPAL SCHOOL DISTRICT; FRED D CASHER,
Individually and as Agent of City of Jackson Municipal School
District,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
No. 02-CV-1649

_____

Before SMITH, GARZA, AND PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Jacqueline Harper appeals the district

court's order granting Defendant-Appellee City of Jackson

Municipal School District's motion for summary judgment.  For the

following reasons, we AFFIRM the judgment of the district court.

_____

[*]      Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During the period of time pertinent to her complaint, Plaintiff Jacqueline Harper taught at Callaway High School ("Callaway") in Jackson, Mississippi. Defendant Fred Casher was the principal at Callaway. Harper alleges that she suffered ongoing sexual harassment by Casher at Callaway between December 1996, soon after Casher was hired as principal, and February 2001, when she began her lawsuit. Specifically, Harper contends that Casher repeatedly propositioned her for sex, uttered racy statements to her, ran his hand up her thigh towards her private area, licked his tongue at her suggestively, felt her behind, and even "snatched [her] breast out of [her] dress and stuck it in his mouth." While Harper related these occurrences to some of her colleagues, neither she nor they reported them to the school district administrators until February 2001.

The City of Jackson Municipal School District ("School District") has had a sexual harassment policy since 1986. In 1992, its provisions regarding procedure were amended to read:

Step One: Within five (5) days of the time a complaint becomes known, the employee will present the complaint orally to his immediate supervisor or the district's title IX coordinator and complete the "Report of Violation of Title IX" form. It should be noted that the complainant does not have to report the incident to the supervisor *before* talking with the Title IX coordinator.

Step Two: Within 3-5 days the supervisor or complainant is to present the completed "Report of Violation of Title IX" form to the designated person in the office of personnel

services.

The 2000 amended policy retained alternative avenues for employees to make complaints.

On February 9, 2001, Harper reported the alleged sexual harassment to Dr. Delores Hopkins, Assistant Superintendent for the School District.  Harper told Hopkins she tolerated Casher's behavior over the years rather than reporting his conduct because she was intimidated by his position of authority and feared losing her job.  Harper asserted that she could not report the sexual harassment to her supervisor, Casher, since he was the perpetrator.  The School District and Harper relate the rest of the exchange between Hopkins and Harper differently.  According to the School District, Hopkins told Harper that Harper could "bypass" the school district's sexual harassment reporting procedure, which required submission of forms, by sending Hopkins a written narrative detailing her complaint.

According to Harper, Hopkins told her she could "bypass" the grievance process due to the nature of her complaint.  Hopkins also told Harper it would be "helpful" to Hopkins' investigation to have some written documentation of Harper's complaint.  Harper believed that she had complied with the grievance process by orally complaining to Hopkins.  Harper contends that Hopkins never instructed her to fill out the "Report of Violation of Title IX" form, nor to see a Title IX coordinator.  Harper

believed that Hopkins was acting as the Title IX coordinator and would file any appropriate forms pursuant to Harper's oral complaint.  Hopkins memorialized the telephone conversation in a memo dated February 21, 2001, writing:

> I explained that you could bypass the grievance process given the nature of the complaint by providing me a written compilation and/or narrative regarding these instances.  To date, I have not received this information.  It would be helpful to have some documentation in pursuing your complaints.

Harper believed that the narrative requested by Hopkins was strictly for Hopkins' own information.  She did not provide the narrative to Hopkins.  On February 12, 2001, Harper completed an intake questionnaire for the Equal Employment Opportunity Commission office in Jackson.  She filed a charge and affidavit with the EEOC on March 21, 2001.

On March 29, 2001, JoAnne Nelson Shepherd, the School District Counsel, telephoned Callaway and left a message asking Harper to call her.  Unbeknownst to Harper, Shepherd was the Title IX coordinator, as well.  Harper believed Shepherd only to be the School District's attorney.  She believed there would be a conflict of interest should Harper confide in Shepherd, and hence, Harper did not return Shepherd's call.

In response to Harper's allegations against Casher, the School District transferred Casher to another school and hired a new principal for the 2001-2002 school year. In October 2002, the School District transferred Harper from Callaway to Hardy Middle

School.  The School District explained to Harper that she was being transferred to better allocate teaching staff since Harper had the lowest number of students in her class compared to other teachers in her field.  When Harper requested to be transferred back to Callaway when a teacher retired, leaving a position in Harper's field open, the School District accommodated her request.  Harper suffered no reduction of salary or benefits during her transfer.

In November 2002, Harper filed a complaint in the United States District Court for the Southern District of Mississippi under Title VII of the Civil Rights Act of 1964.  Harper named two defendants, the School District and Casher, and asserted two claims: an allegation that Casher sexually harassed her while they were both employed at Callaway and an allegation that the School District retaliated against her for filing an EEOC charge regarding the alleged harassment by transferring her to teach at a middle school.  She also maintains that she was denied the opportunity to act temporarily as an administrator while teaching at Callaway and was denied a promotion to assistant principal.

## II. SUMMARY JUDGMENT STANDARD

When a district court grants summary judgment, this court reviews the determination de novo, employing the same standards as the district court.  See Urbano v. Continental Airlines, Inc.,

138 F.3d 204, 205 (5th Cir. 1998). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Price v. Federal Exp. Corp., 283 F.3d 715, 719 (5th Cir. 2002). Summary judgment is mandated where a party fails to establish the existence of an element essential to the case and on which the party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

A. Sexual Harassment

Sexual harassment that is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment'" violates Title VII. Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986)(quoting Hensen v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)(brackets in original). Nevertheless, severe and pervasive sexual harassment, by itself, is not enough to impose liability on the School District. "Title VII does not make employers 'always automatically liable for sexual harassment by their supervisors.'" Faragher v. City of Boca Raton, 524 U.S. 775, 792 (1998)(quoting Meritor, 477 U.S. at 72).

An employer is vicariously liable for a supervisor's sexual harassing behavior of where a tangible employment action is taken against the victim-employee by the harassing supervisor. Faragher, 524 U.S. at 807 (1998).  Where there is no tangible employment action, the employer may avoid liability by raising a two-pronged affirmative defense: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  Id.

First, we address the issue of whether or not the alleged facts, viewed in the light most favorable to Harper, the non-moving party, constitute severe or pervasive sexual harassment. Harper argues "that the district court erred in finding as a matter of law that she was not subjected to an objectively hostile work environment."  However, the district court correctly held that Harper's allegations that Casher subjected her to sexual propositions, sexual comments, and offensive physical contact are sufficient to create a genuine issue of material fact on whether she faced sufficiently severe or pervasive sexual harassment.  We agree that Harper's allegations create an issue of fact on whether the harassment rose to the "severe or pervasive" level.

## 1. Tangible employment action

Having established that Harper's allegations constitute sexual harassment, we turn to the issue of whether or not Harper suffered a tangible employment action inflicted upon her by Casher. If Harper could show that she suffered a tangible employment action by Casher, her supervisor, then the School District would be vicariously liable to Harper. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. . . . A tangible employment action in most cases inflicts direct economic harm." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761-62 (1998).

Harper has not shown that Casher imposed upon her any action that may be characterized as a tangible employment action. The record does not show that Casher inflicted any significant adverse changes on Harper's employment. The School District transferred Casher to another school more than a year before Harper's transfer from Callaway to Hardy Middle School. When Harper was transferred, Callaway had a new principal. Harper has not offered any evidence linking Casher to the decision to transfer Harper. See Casiano v. AT&T Corp., 213 F.3d 278, 284-85 (5th Cir. 2000) (finding no tangible employment action where an employee was denied access to a training program because another

manager, not the harassing supervisor, was responsible for the decision). Further, even if Harper's transfer could be attributed to Casher, it did not inflict significant adverse changes on Harper's employment. During the short duration of her transfer, Harper retained her salary and benefits. At Hardy Middle School, Harper taught a subject within her teaching experience. Harper now remains in the School District's employ having returned to Callaway. She has received over $7,000 in raises since she filed her EEOC complaint. Harper's transfer cannot be characterized as a significant change in her employment status; nor did it inflict direct economic harm.

Harper also alleges that Casher denied her the opportunity to temporarily "fill in" as an assistant principal, thereby keeping her from "a chance to get any [administrative] experience." We rejected a similar claim in Zaffuto v. City of Hammond, 308 F.3d 485 (5th Cir. 2002). There, the plaintiff police officer asserted that "he was denied the opportunity to be the acting shift lieutenant while his supervisor was on vacation." Id. at 493 n.8. We held that such a denial "is far too minor to constitute an ultimate employment action." Id. The insufficiency of such a denial is underscored in Harper's situation since the record shows that Casher twice recommended Harper for assistant principal positions with the School District. The decision not to hire Harper for assistant

principal was not Casher's decision.  The School District did not follow Casher's recommendations and denied Harper the promotions without knowing about the alleged sexual harassment.  See Casiano, 213 F.3d at 284-85 (finding no tangible employment action where an employee was denied access to a training program because another manager, not the harassing supervisor, was responsible for the decision).

Viewing the facts in a light most favorable to Harper, we see nothing in Harper's evidence nor anything in the record supporting an inference that Casher took a tangible employment action against Harper.  We agree with the district court and conclude the School District is not automatically liable to Harper and may assert the Faragher/Ellerth affirmative defense.

2. The Faragher/Ellerth affirmative defense

In the absence of a tangible employment action, summary judgment is appropriate if the School District establishes the two-pronged defense outlined above.  Harper fails to address the rest of the employer liability analysis and does not rebut the School District's affirmative defense.

a. Did the School District Take Reasonable Care in Preventing and Promptly Correcting Sexually Harassing Behavior?

The School District adopted sexual harassment policies in 1986 and updated them in 1992 and 2000.  The School District trained Casher on its sexual harassment policy and sent him updates.  It also investigated a previous, anonymous sexual

harassment allegation against Casher in a timely manner, but could not corroborate the allegation.

Harper's annual employment contracts explicitly made her employment subject to the School District's sexual harassment policies. The record shows that the School District informed Harper that the policies were available in the District Superintendent's office. The policies were also available in the principal's office and the library. The policy provided that an employee may bypass a harassing supervisor and complain about sexual harassment to the District's Title IX coordinator. Harper admitted in her deposition that she was aware that the School District had a sexual harassment policy and conceded that she did not pay much attention to the policy before January 2001.

Once Harper informed Hopkins about the alleged sexual harassment by Casher, Hopkins gave Harper the option to bypass submitting the forms required by the policy by sending Hopkins a written narrative of her complaint. Harper did not send Hopkins any narrative. Instead, she filed an EEOC charge. Despite not having heard from Harper, Hopkins investigated Harper's allegations. Upon receiving the EEOC charge, School District Counsel Shepherd attempted to interview Harper, but Harper did not respond to her telephone messages. While there is contention among the parties as to the characterization of Hopkin's request for Harper's narrative, and a question as to whether Shepard was

properly identified as the Title IX coordinator, the fact remains that Harper did not comply with their requests. In addition, despite not having corroborated Harper's allegations through its investigation, the School District reassigned Casher to another school prior to the start of the new school year and hired a new principal at Callaway where Harper continued to teach.

These facts indicate the School District's sexual harassment policy and response to Harper's complaint were "both reasonable and vigorous." Scrivner v. Socorro Indep. Sch. Dist., 169 F.3d 969 (5th Cir. 1999)(holding that school district's anti-discrimination policy, swift response to harassment complaints, and acceptance of harasser's resignation was sufficient to establish the first prong of an affirmative defense); see also Casiano, 213 F.3d at 286-87 (finding that an employee's admitted knowledge of employer's policy prohibition sexual harassment and complaint procedure and employer's prompt investigation of complaint showed that the employer "exercised reasonable care to prevent, and if not prevented, to correct promptly any sexually harassing behavior by supervisory personnel").

b.  Did Harper Unreasonably Fail to Take Advantage of the School District's Preventive or Corrective Opportunities?

The second prong of the Faragher/Ellerth defense effectuates a "policy imported from the general theory of damages that a victim has a duty 'to use such means as are reasonable under the circumstances to avoid or minimize the damages' that result from

violations of the statute." Faragher, 524 U.S. at 806 (quoting Ford Motor Co. v. EEOC, 458 U.S. 219, 231 n.15 (1982)). "[W]hile proof that an employee failed to fulfill the . . . obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." Id. at 807-08.

In this case, accepting Ms. Harper's testimony as true for purposes of summary judgment, the lower court properly held that her own admitted failure to invoke promptly the School District's complaint process allowed Casher to continue the harassment over the years. Although Harper knew that Casher's alleged conduct violated the School District's sexual harassment policy and knew that she could complain to the School District to have his conduct stopped, she did not do so for over six years. Once she did complain, Harper failed to cooperate with the School District's investigation. She did not provide Shepherd with a narrative, nor did she return the School District Counsel's phone call.

These facts show that Harper unreasonably failed to take advantage of the preventive and corrective measures made available by the School District. Casiano, 213 F.3d at 287 (finding employee "unreasonably failed to take advantage of any

preventive or corrective opportunities" because, even though "he suffered at least fifteen propositions [over a four month period, he] never reported any of the incidents until months after the last of them"); Scrivner, 169 F.3d at 971 (finding employee "failed to reasonably avail herself of [the school district's] preventative and corrective sexual harassment policies" because, "[f]rom the summer of 1995 to March 1996, [she] never complained about [her principal's] increasingly offensive behavior").

Harper's explanation that she was too intimidated to report the sexual harassment is insufficient to show that her failure to complain and cooperate were reasonable. In Young v. R.R. Morrison and Son, Inc., 159 F. Supp. 2d 921 (N.D. Miss. 2000), the court explained why Harper's subjective fears of reprisal do not defeat the School District's affirmative defense:

> All harassment victims risk retaliation when they complain. For Title VII to be properly facilitated, the reasons for not complaining about harassment should be substantial and based upon objective evidence that some significant retaliation will take place. For example, a plaintiff may bring forward evidence of prior unresponsive action by the company or managment to actual complaints. Here, there was no evidence that [the harasser] had ever taken any adverse tangible employment action against complaining employees . . . .

Id. at 927 (citation and quotation marks omitted). Harper failed to substantiate her fears. Viewing the evidence in the light most favorable to Harper and drawing all reasonable inferences in her favor does not save her argument. The School District twice investigated allegations of sexual harassment perpetrated by

Casher. Despite not having corroborated Harper's allegations, the School District chose to transfer Casher.

Thus, we agree with the district court determination that the School District is entitled to the Faragher/Ellerth affirmative defense.

B. Retaliation

To establish a prima facie case for retaliation, a plaintiff must show that (1) she engaged in "protected activity," (2) she suffered an adverse employment action as a result of partaking in the protected activity, and (3) there was a "causal link" between the protected activity and the adverse employment action. Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 385 (5th Cir. 2003). Once the showing is made, the burden shifts to the defendant, who must produce a nondiscriminatory reason for the adverse employment action. Shirley v. Chrysler First, Inc., 970 F.2d 39, 42 (5th Cir. 1992). The plaintiff may rebut by showing that the reason provided by the defendant for taking the adverse employment action is pretextual. Id.

Harper argues that the district court improperly granted summary judgment in favor of the School District on her retaliation claim. According to Harper, she established a prima facie case for retaliation. Harper alleges that the School District retaliated against her for making an EEOC complaint by transferring her mid-semester to another school.

It is undisputed that Harper engaged in protected activity when she filed a complaint with the EEOC. At issue are the second and third prongs of the test. The district court held that Harper failed to satisfy the second and third elements of her prima facie case because she did not suffer an adverse employment action and there was no causal link between the challenged employment action and her protected activity. If Harper failed to establish either of these elements, summary judgment is appropriate.

1. Adverse Employment Action

Harper contends that she suffered an adverse employment action when the School District transferred her from Callaway to Hardy Middle School in October 2002. However, Harper's characterization of her mid-semester transfer to another school as an adverse employment action is misplaced. It is well settled that the Fifth Circuit takes a "narrow view of what constitutes an adverse employment action." Breaux v. City of Garland, 205 F.3d 150, 157 (5th Cir. 2000). That is, adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating. Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 643, 657 (5th Cir. 2002).

Under this framework, Harper did not suffer any adverse employment action while employed at Callaway. Harper's transfer

does not amount to an ultimate employment decision. While transfers might be considered adverse employment actions if they are punitive, see Pierce v. Texas Dep't of Criminal Justice, Inst'al Div., 37 F.3d 1146, 1149 (5th Cir. 1994), or if they could be considered demotions, see Click v. Copeland, 970 F.2d 106, 110 (5th Cir. 1992), Harper provides no evidence that her transfer to Hardy Middle School is either punitive or demotive. To the contrary, Harper's transfer was pursuant to her contract; her contract for employment with the School District provides "[t]hat the employee agrees to reassignment during the school term to any area for which a valid certificate is held." Harper found her transfer undesirable, but, "[u]ndesirable work assignments are not adverse employment actions." Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997).

As of her appeal, Harper still taught at Callaway. See Dorsett v. Bd. of Tr. for State Colls. and Univs., 940 F.2d 121, 123 (5th Cir. 1991). She has been increasingly compensated as a teacher; in the wake of filing her EEOC claim, and prior to her transfer, Harper received two raises totaling $3,929. Since filing her EEOC claim, she has received over $7,000 in raises. Harper's continued employment at Callaway and her receiving annual raises does not constitute retaliation. See Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 267-68 (5th Cir. 1994).

Thus, we agree with the district court that Harper has failed to establish a prima facie case showing that her transfer amounted to an adverse employment action.

2. Causal Connection

Even if Harper's transfer could be characterized as an adverse employment action, Harper fails to prove that a causal link exists between the filing of her EEOC complaint and her transfer. She does not raise a factual dispute as to the School District's nondiscriminatory explanation for her transfer from Callaway to Hardy Middle School. See Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188-89 (5th Cir. 1997). Harper must show that but for the protected activity, she would not have been transferred.

Harper offers no evidence that suggests that her EEOC charge and her transfer are causally linked. We have said, that "the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case." Swanson, 110 F.3d at 1188 n.3. Yet, Harper's proof supporting a causal link between her filing her EEOC complaint and her transfer rests solely on the fact that the transfer happened.

Harper's transfer occurred more than eighteen months after Harper made her EEOC complaint. "Although this lapse of time is, by itself, insufficient to prove there was no retaliation, in the

context of this case it does not support an inference of retaliation, and rather, suggests that a retaliatory motive was highly unlikely." Grizzle, 14 F.3d at 268; see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (5th Cir. 2001) (stating that adverse action taken 20 months after an employee filed an EEOC charge demonstrated "no causality at all"). This unlikelihood is further supported by the fact that the School District reassigned Casher as a result of Harper's EEOC complaint. During summer 2001, the School District transferred Casher to another school and assigned a new principal to Callaway beginning with the 2001-2002 school year.

Furthermore, the School District showed that rather than being retaliatory, the decision to transfer Harper stemmed from an independent, nondiscriminatory reason. In October 2002, the School District's Deputy Superintendent informed the new principal at Callaway that Harper would be reassigned to Hardy Middle School because plaintiff had the fewest number of students in her class compared to the other teachers in her field at Callaway. The "administrative reassignment" was unaccompanied by any change in Harper's pay, benefits, or other conditions of employment. Harper fails to show that the School District's reason for her transfer is pretextual.

In addition, Harper remained at the position to which she was transferred for only a few months. In January 2003 Harper

returned to Callaway when she learned that a teaching position was available to replace a retiring teacher. The School District accommodated her request to fill the vacant position at Callaway.

For these reasons, we agree with the district court that Harper has failed to establish a prima facie case on the third prong of the test for retaliation.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.