Reversed and Remanded and Opinion filed February 28, 2006









Reversed and Remanded and Opinion filed February 28, 2006.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00493-CV

_______________

 

MARGARITA R. JOHNSON, Appellant

 

V.

 

THE CITY OF HOUSTON, Appellee

________________________________________________

 

On Appeal from 129th District Court

Harris County, Texas

Trial Court Cause No. 01‑50747

________________________________________________

 

O
P I N I O N

In
this retaliatory discharge case, Margarita Johnson (AJohnson@) appeals a summary judgment granted
in favor of the City of Houston (the ACity@), on the grounds that the trial
court erred by: (1) granting summary judgment on the issue of limitations; (2)
finding that there was no evidence of causal connection regarding retaliation;
and (3) excluding evidence. We reverse and remand.

Standard of Review








A
traditional summary judgment, as was filed in this case, may be granted if the
motion and summary judgment evidence show that there is no genuine issue of
material fact and the moving party is entitled to judgment as a matter of law
on the issues expressly set out in the motion or response.  Tex.
R. Civ. P. 166a(c).  We review a
summary judgment de novo, taking all evidence favorable to the nonmovant
as true and resolving every doubt, and indulging every reasonable inference, in
the nonmovant's favor.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). 

Limitations

Johnson=s first issue challenges the summary
judgment on the issue of limitations.  It
is undisputed that the suit was filed within sixty days after Johnson received
permission to sue,[1]
but that the City was served with citation after that limitations period ran
out.  However, Johnson contends that the
service date relates back to the filing date because she exercised due
diligence in effecting service on the City.

Filing
suit interrupts limitations only if a plaintiff exercises diligence in serving
the defendant.  Murray v. San
Jacinto Agency, Inc., 800 S.W.2d 826, 830 (Tex. 1990).  When a defendant moves for summary judgment
and shows that service of citation occurred after the limitations deadline, the
burden shifts to the plaintiff to explain the delay.  Id. 
If the plaintiff does so, the burden shifts back to the defendant to
show why those explanations are insufficient as a matter of law.  Carter v. MacFadyen, 93 S.W.3d 307,
313 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied).








In
assessing diligence, we focus on the plaintiff=s efforts to serve the defendant
after suit is filed.  Medina v.
Lopez-Roman, 49 S.W.3d 393, 400 (Tex. App.CAustin 2000, pet. denied).  Due diligence is that which an ordinarily
prudent person would have used under the same or similar circumstances.  Belleza-Gonzalez v. Villa, 57 S.W.3d
8, 12 (Tex. App.CHouston [14th Dist.] 2001, no pet.).  While the exercise of due diligence is
generally a question of fact, the issue can be determined as a matter of law if
no valid excuse exists for a plaintiff=s failure to timely effect service.[2]  If no excuse is offered for a delay in the
service of citation or if the lapse of time and the plaintiff=s action or inaction conclusively
negates diligence, a lack of diligence will be found as a matter of law.  Belleza-Gonzalez, 57 S.W.3d at
12.  However, it is not the period of
delay, but rather the diligence in pursuing service of process, that is the
determinative factor.  See Zacharie
v. U.S. Nat. Res., Inc., 94 S.W.3d 748, 754 (Tex. App.CSan Antonio 2002, no pet.).

A
party may ordinarily rely on the clerk=s office to perform its duty within a
reasonable time so that citation will be issued and served promptly.[3]  Errors in the clerk=s office are generally not charged
against the party seeking issuance of a citation.  See Holstein v. Fed. Debt Mgmt., Inc.,902
S.W.2d 31, 36 (Tex. App.CHouston [1st Dist.] 1995, no writ).  Thus, if the citation is not issued and
served promptly, the suit is not affected unless it is shown that the plaintiff
is responsible for the failure of the court officers to do their duty.[4]
If, on the other hand, the plaintiff could have easily corrected the clerk=s failure to issue citation, the
delay will be charged against the plaintiff.[5]









In
this case, to explain the delay,  Johnson
presented her attorney=s affidavit, which attested that: (1) approximately two to
three weeks after filing suit on October 1, 2001, the attorney=s office contacted the Harris County
District Clerk=s office and was told that issuance
may take longer than usual due to a flood in the Family Court building; (2)
sometime before the Thanksgiving holidays, the attorney=s office again called and was told
that the Clerk=s office was trying to locate the
file, and then the citation would issue; (3) the attorney called the Clerk=s office after the Thanksgiving
holiday and was told that the citation would issue in the next day or two.  The citation then issued on December 4, 2001
and was served two days later.  In
addition, an affidavit from the supervisor for the Civil Intake Division of the
Clerk=s office stated that Johnson filed
suit and paid the necessary fees and thus took all the action required to have
the citation issue, there was no other action she needed to take for citation
to issue, and that there was nothing she did or failed to do which contributed
to the delay.

There
is no evidence in the record that the delay in issuance was due in any part to
Johnson=s action or inaction or that any
further action on her part could have caused citation to be issued or served
sooner.  Under these circumstances, the
City=s motion for summary judgment does
not show a lack of diligence as a matter of law, and Johnson=s first issue is sustained.

Retaliation

Johnson=s second issue contends that the
evidence fails to show as a matter of law that no causal connection existed
with regard to her retaliation claim between the protected activity and the
termination of her employment. 

Johnson
brought this retaliation claim under section 21.055 of the Texas Commission on
Human Rights Act (ATCHRA@).  See Tex. Lab. Code Ann. ' 21.055 (Vernon 1996).  The purpose of the TCHRA is to provide for
the execution of the policies of Title VII of the Civil Rights Act of 1964.[6]  Tex.
Lab. Code Ann. ' 21.001(1) (Vernon 1996); Quantum Chem. Corp. v. Toennies,
47 S.W.3d 473, 476 (Tex. 2001).  Thus,
analogous provisions of Title VII and the cases interpreting them guide our
reading of the TCHRA.  Quantum Chem.
Corp., 47 S.W.3d at 476.








In
a retaliation case, the plaintiff must first make a prima facie showing
that: (1) he engaged in a protected activity; (2) an adverse employment action
occurred; and (3) a causal link existed between the protected activity and the
adverse action.  Pineda v. United
Parcel Serv., Inc., 360 F.3d 483, 487 (5th Cir. 2004).  Here, it is undisputed that Johnson engaged
in the protected activity of filing a formal Equal Employment Opportunity
Commission (AEEOC@) complaint (the Acomplaint@) alleging discrimination and that
she was subsequently terminated from her employment. 

For
the Acausal link@ prong in a prima facie showing of
retaliation, the legal standard is not as stringent as the Abut for@ standard.  Evans v. City of Houston, 246 F.3d 344,
354 (5th Cir. 2001).  Therefore, a
plaintiff need not prove that her protected activity was the only factor
motivating the employer=s decision and only a minimal showing is required.  Id.; Winters v. Chubb & Son, Inc.,
132 S.W.3d 568, 574 (Tex. App.CHouston [14th Dist.] 2004, no pet.).  Close timing between an employee=s protected activity and the adverse
action can provide the causal connection required for a prima facie case.  Id.

In
this case, Johnson was an employee in the City Health and Human Services
Department (the AHealth Department@). 
She filed the complaint on January 8, 2001, the Health Department
received it on January 16, and the Director of the Health Department, Dr.
Devignes-Kendrick, sent Johnson a ANotice of Meeting Regarding
Recommendation of Indefinite Suspension@ (the Asuspension notice@) on January 18.  Although ten days elapsed between Johnson
sending the complaint and the issuance of this notice of suspension, the time
between the City=s receipt of the complaint and its issuance of the suspension
notice was only two days.  This time
lapse is sufficient to show the causal connection element of a prima facie
case.[7]








Having
concluded that Johnson made a prima facie case, we look to whether the
City produced evidence of a legitimate nonretaliatory purpose for the
employment action.  Pineda, 360
F.3d at 487.  In this case, the City
began investigating whether Johnson was Jennifer Smith=s mother in December of 2000 before
Johnson filed her complaint.  The City
composed a letter, which it presented to Johnson on December 22, 2000, inquiring
whether (1) Smith was Johnson=s daughter; (2) Johnson had notified her supervisor that
Smith was her daughter; and (3) Johnson had removed herself Afrom any involvement regarding the
hiring or any other personnel actions concerning@ Smith.  As summary judgment evidence to show a
legitimate nonretaliatory reason for Johnson=s termination, the City offered its
termination letter (the Atermination letter@) dated March 2, 2001, stating that
Johnson: (1) in early 1999, participated in processing an employment
application for her daughter without disclosing the relationship to her
supervisor; (2) in early and mid-2000, participated in a meeting concerning her
daughter=s salary, hours, benefits, and other
personnel issues without disclosing their relationship to her immediate
supervisor; and (3) failed to disclose her daughter as a relative employed by
the City in August of 2000 when she herself applied for a Deputy Director
position with the City.  These actions
allegedly violated a city ordinance and Mayor=s policy concerning conflicts of
interest.[8]








Ordinarily,
if the employer meets its burden of showing a legitimate, nonretaliatory reason
for termination, then the plaintiff must prove that the employer=s stated reason for the adverse
action was merely a pretext for the real, retaliatory reason.  Id. 
However, because this appeal involves a summary judgment, the burden
remained on the City to prove a legitimate nonretaliatory reason as a matter of
law.  See Tex. R. Civ. P. 166a(c); M.D. Anderson Hosp. and Tumor
Inst. v. Willrich, 28 S.W.3d 22, 24 (Tex. 2000).  Therefore, Johnson could defeat the summary
judgment by either: (1) establishing that the City's summary judgment evidence
failed to prove, as a matter of law, that the City's proffered reason was a
legitimate, nonretaliatory reason for termination; or (2) offering evidence
that otherwise raised a fact issue with regard to pretext.  M.D. Anderson, 28 S.W.3d at 24.













Summary
judgment evidence in the form of Johnson=s testimony at the Loudermill
Meeting[9]
(the meeting noticed in the suspension notice) indicates that she had informed
her supervisors verbally in October of 1998 and by memorandum in May of 1999 of
her familial relationship with Smith. 
Johnson presented further testimony and exhibits evidencing that: (1) at
the Loudermill Meeting on January 24, the Health Department Director, Kendrick,
who made the final recommendation on whether an employee is terminated, was aware
that Johnson had filed the complaint because she had a copy of it and asked
Johnson about the specifics in it at that meeting; (2) the complaint
specifically complained of Kendrick allowing discrimination to occur against
Johnson;[10]
(3) the Health Department database of each employee who filed a discrimination
complaint with the EEOC was maintained by Johnson=s supervisor, Al Almaya, who first
recommended Johnson=s termination on January 16, 2001, the same day as the Health
Department received her complaint; (4) Kendrick refused Johnson=s request to postpone the Loudermill
Meeting because she was on medical leave and insisted that Johnson or her
counsel appear as scheduled on January 24, 2001;[11]
(5) in the past, the Health Department had taken employees= supervisors out of a disciplinary
role over the employees where an employee had a pending complaint against the
supervisor, but Kendrick not only did not recuse herself from Johnson=s Loudermill Meeting, she presided
over it; (6) the City failed to follow Mayor=s Policy 104.00 in terminating
Johnson in that the issue regarding her familial relationship was never brought
to the attention of the Director of Personnel nor did that Director recommend
any course of action;[12]
(7) Johnson had an excellent work record with no prior infractions, which the
City=s progressive discipline policy
required to be considered in determining the severity of punishment; (8) the
City failed to follow its progressive discipline policy,[13]
which indicates that a less severe discipline should have been imposed because
Johnson=s alleged violations did not fall
within the category warranting immediate termination; (9) other employees who
were terminated for allegedly similar violations to those of Johnson also Ahad prior discipline, including
numerous counseling records or written reprimands@;[14]
and (10) the City failed to show that any other employee had ever been
terminated or disciplined for failing to disclose a familial relationship with
another employee.

Because
the foregoing evidence is sufficient to raise a fact issue on whether the City=s termination of Johnson was
motivated by the filing of her complaint, we sustain Johnson=s second issue, reverse the judgment
of the trial court, and remand this case to the trial court for further
proceedings.[15]

 

/s/        Richard H. Edelman

Justice

 

Judgment rendered
and Opinion filed February 28, 2006.

Panel consists of
Justices Fowler, Edelman, and Frost.

 











[1]           After
a person files a complaint with the Commission on Human Rights and the complaint
is not dismissed or resolved, the Commission will issue a written notice of the
complainant=s right to file a civil action, and the complainant
may bring a suit within sixty days after the date this notice is received.  See Tex.
Lab. Code Ann. '' 21.201, 21.252, 21.254 (Vernon 1996). 





[2]           Taylor
v. Thompson, 4 S.W.3d 63, 65 (Tex. App.CHouston
[1st Dist.] 1999, pet. denied); see also Gant v. DeLeon, 786 S.W.2d 259,
260 (Tex. 1990).  





[3]           Allen
v. Rushing, 129 S.W.3d 226, 231 (Tex. App.CTexarkana
2004, no pet.); see also Jackson v. J.R. Neatherlin Corp., 557 S.W.2d
327, 328 (Tex. Civ. App.CHouston [1st Dist.] 1977, writ ref=d n.r.e.). 





[4]           Allen,
129 S.W.3d at 231; Curtis v. Speck, 130 S.W.2d 348, 352 (Tex. Civ. App.CGalveston 1939, writ ref=d). 





[5]           Allen,
129 S.W.3d at 231; see also Boyattia v. Hinojosa, 18 S.W.3d 729, 734
(Tex. App.CDallas 2000, pet. denied).  





[6]           See
42 U.S.C.A. 2000e-2000e-17 (West 2003). 





[7]           The
City argues that a plaintiff cannot establish a prima facie case of
retaliation where the employer=s investigation occurred before the employee engages
in a protected activity.  See Zaffuto
v. City of Hammond, 308 F.3d 485, 493-94
(5th Cir. 2002).  However, in Zaffuto, both the events
giving rise to Zaffuto=s suspension and the investigative fact finding
occurred before he engaged in the protected activity.  Id.





[8]           In its
suspension notice as well as its subsequent termination letter, the City stated
that Johnson violated City of Houston Code of Ordinances section 14-183 and
Mayor=s Policy 104.00. 
Section 14-183 provides:

 

(a) An employee shall not: . . . 

(3) Engage in any business or professional activity
which tend to impair independence of judgment in the discharge of official
duties.

 

(b) If an employee has a personal interest, direct or
indirect, financial or otherwise, in any decision pending before such employee
or a body or group of which the employee is a member, the employee shall not
participate in the consideration of the matter. 
If such employee is in attendance at such meeting, he or she shall
publicly disclose a conflict of interest to the body or group prior to any
determination of the matter.

 

Mayor=s Policy 104.00, as cited by the
City, states: 

Employment: Hiring of
Relatives

(6) Unless
in response to emergency situations involving matters of the police and fire
department, it shall be considered a conflict of interest when an employee=s job duties place the employee in a position of
having to conduct official City business of any kind with a relative, be that a
relative of a private citizen or another City worker.  In any such case it shall be the
responsibility of the affected employee to advise his/her immediate supervisor
of the conflict of interest and request appropriate reassignment. 





[9]           As
part of the City=s termination process, an employee is requested to
appear at a Loudermill Meeting to discuss charges or allegations brought
against the employee before a final recommendation regarding termination of
employment is forwarded to the Mayor. 
The employee may be represented by counsel and present evidence at the
meeting.





[10]          In
particular, the charge alleged:

I. Since my hire date, December 3, 1993, I have been
harassed by my co-workers and supervisors because of my national origin, sex,
and age.  Respondent is the City of
Houston, Houston Department of Health and Human Services (HDHHS).

II. My supervisors, Dr. Desvignes Kendrick, Earl
Travis, and Al Amaya have allowed the harassment to continue.  On December 22, 2000, Daphne Sands, Senior
Contract Compliance Division Manager, ushered me into a room with a witness and
proceeded to interrogate me, acting as a department council [sic] and violating
my rights to privacy.

III. I have also been denied promotion on July 19,
1997; October 25, 1997; August 15, 1998; May 22, 1999; August 30, 1999; and
August 27, 2000.  Lesser qualified
employees were promoted over me.

IV. I
believe that I have been discriminated against because of my national origin,
Hispanic, and my sex, female, in violation of Title VII of the Civil Rights Act
of 1964, as amended.  I also believe that
I have been discriminated against because of my age, in violation of the Age
Discrimination in Employment Act of 1967, as amended.





[11]          Although
Johnson had been granted medical leave for a heart condition, the City=s affidavit indicates that she had submitted a doctor=s note stating that she was able to return to work on
January 12, 2001.





[12]          See
supra note 5.





[13]          The
applicable Employee Discipline Policy states:

It is the
policy of the City of Houston to follow a course of progressive discipline as
appropriate when an employee violates City rules, regulations, policies, or
those actions deemed unethical or inappropriate to employee conduct.  Employees shall be subject to disciplinary
action as set forth in the guidelines below. 





[14]          Johnson
presented evidence of two such employees, one of whom was terminated for
violating a conflict of interest policy only after he was ordered by Kendrick
to recuse himself from further meetings and failed to do so, and after he was Acounseled@ twice. 





[15]          In
light of our disposition in this case, we need not address Johnson=s third issue, challenging the exclusion of evidence;
and we overrule as moot both: (1) Johnson=s Motion
for Leave to Supplement and/or Request that this Court Take Judicial Notice of
an affidavit by Mayor Lee Brown filed in another suit involving the City of
Houston; and (2) the City=s Motion to Strike and Response to Johnson=s Motion for Leave to Supplement and/or Request that
this Court take Judicial Notice of the mayor=s affidavit
as well as to take judicial notice of City of Houston Ordinance ' 14-182.