# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00096-CV

**Christopher Medina, Appellant**

**v.**

**Dr. H. Lopez-Roman and Dr. Stuart Crane, Appellees**

## FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 99-077-C368, HONORABLE BURT CARNES, JUDGE PRESIDING

Appellant Christopher Medina brought article 4590i (health care liability) claims and various non-article 4590i claims against appellees, Dr. Stuart Crane and Dr. H. Lopez-Roman (collectively, "the doctors"). *See* Tex. Rev. Civ. Stat. Ann. art 4590i, §§ 1.01-16.02 (West Supp. 2000). The district court rendered summary judgment in favor of the doctors on all claims. In this consolidated appeal, Medina challenges both orders. We will reverse and remand.

## FACTUAL BACKGROUND

On December 3, 1993, fifteen-year-old Christopher Medina was admitted to Williams House, a residential treatment center in Lometa, Texas, for the purposes of conducting a mental health evaluation and determining the most appropriate residential or foster care placement for him. Williams House staff approached Dr. Stuart Crane, who was leaving Williams House after working with some of the children, and explained that Medina had left his prescription medications behind.

A staff member asked Dr. Crane to write a prescription for Medina; Dr. Crane wrote Medina a prescription for Ritalin and Tegretol.

Approximately two to three weeks after Medina entered Williams House, staff members brought Medina to the Metroplex Pavilion in Lampasas, Texas, for a screening to determine whether Medina required psychiatric treatment on an inpatient basis. Dr. Crane, who was working at the Metroplex Pavilion that day, evaluated Medina and spoke with Williams House staff, ultimately determining that Medina could remain at Williams House and be seen on an outpatient basis.

On March 3, 1994, Medina fell on his head while at Williams House and injured his neck. Staff members drove him to the emergency room at Rollinsbrook Medical Center in Lampasas, where he was treated by Dr. Lopez-Roman. When Medina arrived, he complained of dizziness and pain in his neck, and commented that he was unable to move his upper extremities. Dr. Lopez-Roman performed a physical examination of Medina and ordered cervical spine X-rays, a blood count, and a blood chemistry test. Because no radiologist was on staff that evening, Dr. Lopez-Roman viewed the X-rays himself but found nothing abnormal. Throughout the approximately two-hour period Medina was in the emergency room, Dr. Lopez-Roman's examinations revealed various findings; for example, at one point Medina did not respond to painful stimuli, but he later complained that the IV needle being inserted into his arm was painful. Medina complained that he could not move his arms, but he later moved his hands and legs. Because of Medina's fluctuating symptoms and psychological history, Dr. Lopez-Roman asked hospital staff to contact Medina's psychiatrist. Hospital staff paged Dr. Crane, who soon called Dr. Lopez-Roman.

2

Dr. Lopez-Roman asked Dr. Crane whether it was possible that Medina might "somatize," i.e., express physical symptoms because of emotional factors. Dr. Crane informed Dr. Lopez-Roman that there was a possibility of somatization with Medina, considering his history of developmental disorder and mild retardation. Based on his examination of Medina and consultation with Dr. Crane, Dr. Lopez-Roman noted that he believed Medina was exhibiting psychosomatic symptoms, not spinal-cord injuries. Dr. Lopez-Roman discharged Medina from the emergency room later that same evening.

Medina returned to Williams House where he spent the night. The following morning, Williams House staff transported Medina to Austin, Texas, to be returned to the custody of Arturo Escajeda, a caseworker with the Texas Department of Protective and Regulatory Services. Because Medina was still complaining about pain, Escajeda demanded that Medina be transported to a local hospital where he was diagnosed with a broken neck. Medina subsequently underwent surgery to fuse his C-1 and C-2 vertebrae and began ongoing physical rehabilitation.

On May 13, 1994, Medina sent a statutory pre-suit notice letter, as required under article 4590i of the Medical Liability and Insurance Improvement Act (the "Medical Liability Act"), to Dr. Lopez-Roman, asserting a health care liability claim relating to the injury he sustained March 3, 1994 and threatening to file suit. *See* Tex. Rev. Civ. Stat. Ann. art 4590i, § 4.01 (West Supp. 2000). Medina brought suit against Dr. Lopez-Roman in December of 1994 but later filed a non-suit. On April 3, 1996, Medina turned eighteen. On October 15, 1996, Medina sent a statutory pre-suit notice letter to Dr. Crane alleging that Dr. Crane failed, among other things, to properly diagnose Medina and provide accurate information to Dr. Lopez-Roman on March 3, 1994. On October 31,

3

1996, Medina sent a second pre-suit notice letter to Dr. Lopez-Roman. Medina filed suit against both doctors on April 3, 1998, his twentieth birthday. Medina requested service of citation simultaneously with the filing of his suit, but Dr. Lopez-Roman was not served until October 6, 1998.

Both doctors filed motions for summary judgment on the basis that the applicable period of limitations had expired and Medina's claims were therefore barred. Medina thereafter filed his first amended petition, adding non-article 4590i causes of action against both Dr. Crane and Dr. Lopez-Roman. On October 27, 1999, the district court rendered a summary judgment in favor of the doctors on Medina's article 4590i medical malpractice claims. On January 3, 2000, the district court rendered a second summary judgment in favor of the doctors on all of Medina's remaining non-article 4590i claims. Medina now appeals both orders.

**DISCUSSION**

***Limitations Period for Medina's Article 4590i Claims***

Medina's first four points of error all concern the applicable limitations period for his article 4590i claims. Medina contends that the district court erred in granting summary judgment on the ground that his article 4590i claims were barred by limitations. The standards for reviewing motions for summary judgment are well established: (1) the movants for summary judgment have the burden of showing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant moving for summary

judgment on the affirmative defense of limitations has the burden of conclusively establishing that defense as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

The statute of limitations for health care liability claims is found in section 10.01 of the Medical Liability Act. Tex. Rev. Civ. Stat. Ann. art 4590i, § 10.01 (West Supp. 2000). Section 10.01 provides:

> [N]o health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; . . . .

*Id.* The Supreme Court of Texas, however, deemed this provision unconstitutional as applied to minors. *Weiner v. Wasson*, 900 S.W.2d 316 (Tex. 1995). In striking down section 10.01, the court relied on its decision in *Sax v. Votteler*, 648 S.W.2d 661 (Tex. 1983), in which the court held a limitations provision of the Texas Insurance Code similar to section 10.01 unconstitutional as applied to minors under the open courts provision of the Texas Constitution. *Weiner*, 900 S.W.2d at 318-20. The court reasoned that because section 10.01, like the provision at issue in *Sax*, restricted a child's right to bring a medical malpractice action, section 10.01 also violated the Texas Constitution as applied to minors. *Id.* The court then proceeded to determine the appropriate limitations period to apply to a minor's medical malpractice claims, concluding that "[s]ections 16.001 and 16.003 of the Texas Civil Practice and Remedies Code together provide a general statute of limitations for minors' personal injury claims." *Id.* at 321. Section 16.003 establishes a two-year limitations period while section 16.001 tolls the period until the minor reaches eighteen years of age. Tex. Civ. Prac. & Rem.

Code Ann. §§ 16.001, .003 (West Supp. 2000). Applying sections 16.001 and 16.003 to the facts of that case, the court stated: "We therefore hold that [the plaintiff] had two years *after* attaining age eighteen to bring suit for the acts of medical malpractice allegedly committed during his minority." *Weiner*, 900 S.W.2d at 321 (emphasis added).

Although Dr. Crane and Dr. Lopez-Roman concede that Medina's causes of action are governed by the general tolling and limitations provisions of sections 16.001 and 16.003, both doctors contend that Medina's claims are nonetheless barred because the period of limitations expired one day before Medina filed suit. The doctors acknowledge that the limitations period was tolled until April 3, 1996, the day Medina turned eighteen. However, the doctors argue that because the two-year period began to run on April 3, 1996, it expired on midnight of April 2, 1998, a "full two years later." In support of their argument, the doctors rely on dicta in *Weiner*, contrary to its holding, which states that "[t]aken together, [sections 16.001 and 16.003 of the Texas Civil Practice and Remedies Code] required a minor to file a claim *before* reaching age twenty for personal injuries sustained during the period of minority." *Id*. (emphasis added). By filing suit on April 3, 1998, the doctors maintain that Medina filed his suit one day too late. Hence, in light of the ambiguity in *Weiner*, we are faced with the issue of determining the proper method for computing the two-year limitations period in section 16.003 of the Civil Practice and Remedies Code as it applies to a minor's health care liability claim.

We find untenable the doctors' method for calculating when the limitations period expired. Instead, we apply the more logical computation method whereby one looks at the calendar day that a minor attains majority and then uses the corresponding date two years later. The supreme

6

court adopted our holding in *Pitcock v. Johns*, 326 S.W.2d 563 (Tex. Civ. App.—Austin 1959, writ ref'd), in which this Court engaged in a detailed analysis of the proper method of calculating a statutorily-dictated period of time and reasoned as follows:

> Where "month," as employed in a statute, judicial proceeding, or contract, means calendar month, a period of a month or months is to be computed not by counting days, but by looking at the calendar, and it runs from a given day in one month to a day of the corresponding number in the next or specified succeeding month . . . that is, if it begins on the 5th of January, it would end on the 5th of February, although thirty-one days would elapse. If it begins on the 5th of February, it would end on the 5th of March, although but twenty-eight days have elapsed, leap year being excepted. Or if it begins on the 5th of February during leap year, it would end on the 5th of March, although twenty-nine days elapse. If it begins on the 5th of June, it would end on the 5th of July, although thirty days had elapsed.

*Id*. at 565-66 (citing *Gardner v. Universal Life & Accident Ins. Co.*, 164 S.W.2d 582, 583 (Tex. Civ. App.—Dallas 1942, writ dism'd w.o.j.); *McKinney v. State*, 66 S.W. 769, 770 (Tex. Crim. App. 1902)). Thus, under *Pitcock*, a calendar month runs from the date of the event to the same date in the next month or succeeding month, depending upon the date of the limitations period. *Fisher v. Westmont Hospitality*, 935 S.W.2d 222, 225 (Tex. App.—Houston [14th Dist.] 1996, no pet.).

The same rule applies to computing periods of limitation based on years. *Id*.; *Pitcock*, 325 S.W.2d at 566. The term "year" is defined as a calendar year. Tex. Gov't Code Ann. § 312.011(18) (West 1998). Thus, using the measure of a calendar year, we look to the date upon which the event occurred and then look at the calendar to find the same date, two years later, to determine the expiration of the statute of limitations. *Fisher*, 935 S.W.2d at 225-26. This method of calculation has been recognized by numerous courts. *See, e.g.*, *Cortinas v. Wilson*, 851 S.W.2d 324, 326 (Tex. App.—Dallas 1993, no writ) (holding that where plaintiff's cause of action for

7

personal injuries accrued on June 17, 1989, two-year limitations period expired on June 17, 1991); *Seibert v. General Motors Corp.*, 853 S.W.2d 773, 777 (Tex. App.—Houston [14th Dist.] 1993, no writ) (noting that where appellant's cause of action accrued on May 29, 1976, application of two-year limitations period meant appellant's cause of action was barred on May 29, 1978); *Seibert v. Sally*, 238 S.W.2d 266, 267 (Tex. Civ. App.—Galveston 1951, no writ) (holding that where promissory note was dated September 26, 1945, suit filed on September 26, 1949 was filed within applicable four-year limitations period); *Ellis v. Heidrick*, 154 S.W.2d 293, 294 (Tex. Civ. App.—San Antonio 1941, writ ref'd w.o.m.) (holding that where conversion occurred on September 4, 1935, two-year limitation period "expired on and with September 4, 1937").

This method applies with equal force to calculating a limitations period following the removal of a disability, such as minority. The supreme court addressed the issue of determining the correct period of limitations after the removal of a disability in *Kirkpatrick v. Hurst*, 484 S.W.2d 587 (Tex. 1972). In that case, the court followed the rule that "the statute of limitations commences to run against a minor on the date [he attains majority] since he can institute suit at any moment of that day." *Id*. at 588. Applying this principle to the facts before it, the court analogized the disability of coverture to the disability of minority, and reasoned that if the plaintiff was under the disability of coverture until January 1, 1968, when an amendment removing her disability became effective, allowing her to bring suit on her own behalf,

> the right of [the plaintiff] to enforce her claim for injuries to her body arose the first instant of January 1, 1968, and existed during the whole of this day. Accordingly, there is no basis for excluding this day in computing the period of limitation and the commencement of her suit on January 2, 1970, was not within the two year period provided . . . .

8

*Id*. The court "disagree[d] that Rule 4 of the Texas Rules of Civil Procedure extended the statutory limitation period by one day, i.e., until January 2, 1970, by reason of the fact that January 1, 1970, was a legal holiday." *Id*. at 589. Implicit in the court's statement that Rule 4 did not extend the period of limitations by *one day* to January 2 is the assertion that the limitations period ended on January 1. The period of limitations thus ran from the date the disability was removed until the same calendar day, two years later.

The events giving rise to Medina's alleged cause of action occurred in March of 1994, at a time when he was younger than eighteen years of age and therefore, in the eyes of the law, under a legal disability. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.001. Under *Weiner*, the two-year limitations period for his cause of action did not commence running until his eighteenth birthday when his legal disability was removed. *Weiner*, 900 S.W.2d at 319. Medina turned eighteen on April 3, 1996. Medina's right to enforce his claim against Dr. Crane and Dr. Lopez-Roman thus arose the first instant of April 3, 1996, and existed during the whole of that day. Applying the computation method discussed above, Medina had until two calendar years later, April 3, 1998, to file suit. Unlike the plaintiff in *Kirkpatrick*, Medina did not file one day too late; because he commenced his action on April 3, his claims were not barred.

Our determination is supported by the Texas Supreme Court's discussion of the limitations issue in *S.V. v. R.V.*, 933 S.W.2d 1 (Tex. 1996). In that case, the plaintiff sued her father for negligence for acts occurring while the plaintiff was a minor. The court stated that the plaintiff's claims were subject to the two-year statute of limitations, which did not begin to run until the plaintiff's eighteenth birthday, October 15, 1988; the plaintiff's claims "were thus barred by

9

limitations *after* October 15, 1990." *Id*. at 13 (emphasis added); *accord Savage v. Psychiatric Inst., Inc.*, 965 S.W.2d 745, 753 (Tex. App.—Fort Worth 1998, pet. denied) (noting that limitations period on minor's claims against hospital began running on September 30, 1992 when plaintiff turned eighteen, and ended on September 30, 1994). Because Medina filed suit on April 3, 1998, two years after his eighteenth birthday, his claims were not barred by the applicable limitations period. The doctors have not conclusively established the defense of limitations; we therefore sustain Medina's points of error to the extent they assert his claims were not barred by the limitations period by his filing suit on his twentieth birthday.

### Medina's Non-Article 4590i Claims

Having determined that Medina's article 4590i claims were not barred by the limitations period, we now address Medina's other claims. After Dr. Crane filed his motion for summary judgment, Medina amended his original petition by adding additional, non-article 4590i causes of action including breach of patient confidentiality, intentional misrepresentation, negligent misrepresentation, and violation of the Texas Deceptive Trade Practices Act. These claims are also subject to a two-year limitations period. For the same reason, we conclude that Medina's non-4590i claims are not barred by the limitations period.

### Due Diligence

Although we have determined that Medina filed suit within the limitations period, Dr. Lopez-Roman urges that our analysis does not end there. In his summary judgment pleadings, Dr. Lopez-Roman contends that Medina failed to use due diligence in attempting to serve him with the

citation. The mere filing of a petition will not toll the running of a statute of limitations; the plaintiff must exercise due diligence in procuring the issuance and service of citation upon the defendant. *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 890 (Tex. 1975). Thus, if a plaintiff files a petition within the limitations period but does not serve the defendant until after the statutory period has expired, the date of service will nonetheless relate back to the date of filing *if* the plaintiff can show he exercised diligence in effecting service. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990). A party moving to dismiss a suit on the ground that the petition was filed but not served within the applicable limitations period must establish that ground as a matter of law. *Zale*, 520 S.W.2d at 891.

In assessing diligence, we focus on the plaintiff's efforts to serve the defendant after suit has been filed. *Martinez v. Becerra*, 797 S.W.2d 283, 285 (Tex. App.—Corpus Christi 1990, no writ). Generally, a fact question exists if the record reflects a reasonable excuse for delay. *Id*. However, a reviewing court may find a lack of diligence as a matter of law if no valid excuse for lack of service is offered, or if the lapse of time and the plaintiff's action, or inaction, conclusively negates diligence. *Hansler v. Mainka*, 807 S.W.2d 3, 5 (Tex. App.—Corpus Christi 1991, no writ).

Dr. Lopez-Roman was not served until almost four months after Medina filed his cause of action and the limitations period expired. Promptly after Medina filed suit, he attempted service on Dr. Lopez-Roman by certified mail. The citation, however, was received by an individual unacquainted with Dr. Lopez-Roman at an address unknown to the doctor. The Travis County District Clerk issued a new citation on September 30, 1998, and Dr. Lopez-Roman was served on October 6, 1998. Medina contends the delay in service resulted from Dr. Lopez-Roman's frequent changes of address. The summary judgment record reflects that, during the relevant six-month time

period, Dr. Lopez-Roman continually commuted around the state of Texas: he lived in Austin but kept a house in Williamson County; he commuted to Dallas to finish his fellowship, initially living with a family in Dallas and later renting a temporary apartment in Irving; he then came back to Austin for a period and thereafter moved to Sugar Land; he also worked on a contract basis in Victoria and Wharton. Because Medina proffered a reasonable excuse for the delay in service, a fact question exists on that issue. Consequently, Dr. Lopez-Roman has not established Medina's lack of diligence as a matter of law. We accordingly sustain Medina's fourteenth point of error.

## CONCLUSION

We conclude that Dr. Crane and Dr. Lopez-Roman's motions for summary judgment do not demonstrate, as a matter of law, that the doctors were entitled to the defense of limitations. We further conclude that the doctors have not established Medina's lack of due diligence as a matter of law. To the extent that the district court's decision to grant summary judgment was based on Medina filing his article 4590i and non-article 4590i claims after the limitations period had expired, we sustain Medina's relevant points of error.[1] We accordingly reverse the summary judgment orders and remand the cause to the district court for further proceedings.

Marilyn Aboussie, Chief Justice

---

[1] Because resolution of Medina's other points of error is not necessary to the outcome of this appeal, we need not reach them. *See* Tex. R. App. P. 47.1.

Before Chief Justice Aboussie, Justices Kidd and Yeakel

Reversed and Remanded

Filed:   November 30, 2000

Publish