**Margarita R. JOHNSON, Appellant,**

v.

**The CITY OF HOUSTON, Appellee.**

**No. 14–04–00493–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 28, 2006.

Rehearing Overruled Aug. 3, 2006.

Mark G. Lazarz, Houston, for appellant.

Jocelyn Yvon Labove, Timothy J. Higley, Houston, for appellee.

Panel consists of Justices FOWLER, EDELMAN, and FROST.

## OPINION

RICHARD H. EDELMAN, Justice.

In this retaliatory discharge case, Margarita Johnson ("Johnson") appeals a summary judgment granted in favor of the City of Houston (the "City"), on the grounds that the trial court erred by: (1) granting summary judgment on the issue of limitations; (2) finding that there was no evidence of causal connection regarding retaliation; and (3) excluding evidence. We reverse and remand.

### Standard of Review

A traditional summary judgment, as was filed in this case, may be granted if the motion and summary judgment evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or response. TEX.R. CIV. P. 166a(c). We review a summary judgment *de novo*, taking all evidence favorable to the nonmovant as true and resolving every doubt, and indulging every reasonable inference, in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005).

### Limitations

Johnson's first issue challenges the summary judgment on the issue of limitations. It is undisputed that the suit was filed within sixty days after Johnson received permission to sue,[1] but that the City was served with citation after that limitations period ran out. However, Johnson contends that the service date relates back to the filing date because she exercised due diligence in effecting service on the City.

Filing suit interrupts limitations only if a plaintiff exercises diligence in serving the defendant. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 830 (Tex.1990). When a defendant moves for summary judgment and shows that service of citation occurred after the limitations deadline, the burden shifts to the plaintiff to explain the delay. *Id.* If the plaintiff does so, the burden shifts back to the defendant to show why those explanations

---

1. After a person files a complaint with the Commission on Human Rights and the complaint is not dismissed or resolved, the Commission will issue a written notice of the complainant's right to file a civil action, and the complainant may bring a suit within sixty days after the date this notice is received. *See* TEX. LAB.CODE ANN. §§ 21.201, 21.252, 21.254 (Vernon 1996).

are insufficient as a matter of law. *Carter v. MacFadyen,* 93 S.W.3d 307, 313 (Tex. App.-Houston [14th Dist.] 2002, pet. denied).

In assessing diligence, we focus on the plaintiff's efforts to serve the defendant after suit is filed. *Medina v. Lopez–Roman,* 49 S.W.3d 393, 400 (Tex.App.-Austin 2000, pet. denied). Due diligence is that which an ordinarily prudent person would have used under the same or similar circumstances. *Belleza–Gonzalez v. Villa,* 57 S.W.3d 8, 12 (Tex.App.-Houston [14th Dist.] 2001, no pet.). While the exercise of due diligence is generally a question of fact, the issue can be determined as a matter of law if no valid excuse exists for a plaintiff's failure to timely effect service.[2] If no excuse is offered for a delay in the service of citation or if the lapse of time and the plaintiff's action or inaction conclusively negates diligence, a lack of diligence will be found as a matter of law. *Belleza–Gonzalez,* 57 S.W.3d at 12. However, it is not the period of delay, but rather the diligence in pursuing service of process, that is the determinative factor. *See Zacharie v. U.S. Nat. Res., Inc.,* 94 S.W.3d 748, 754 (Tex.App.-San Antonio 2002, no pet.).

A party may ordinarily rely on the clerk's office to perform its duty within a reasonable time so that citation will be issued and served promptly.[3] Errors in the clerk's office are generally not charged against the party seeking issuance of a citation. *See Holstein v. Fed. Debt Mgmt.,* *Inc.,* 902 S.W.2d 31, 36 (Tex.App.-Houston [1st Dist.] 1995, no writ). Thus, if the citation is not issued and served promptly, the suit is not affected unless it is shown that the plaintiff is responsible for the failure of the court officers to do their duty.[4] If, on the other hand, the plaintiff could have easily corrected the clerk's failure to issue citation, the delay will be charged against the plaintiff.[5]

In this case, to explain the delay, Johnson presented her attorney's affidavit, which attested that: (1) approximately two to three weeks after filing suit on October 1, 2001, the attorney's office contacted the Harris County District Clerk's office and was told that issuance may take longer than usual due to a flood in the Family Court building; (2) sometime before the Thanksgiving holidays, the attorney's office again called and was told that the Clerk's office was trying to locate the file, and then the citation would issue; (3) the attorney called the Clerk's office after the Thanksgiving holiday and was told that the citation would issue in the next day or two. The citation then issued on December 4, 2001 and was served two days later. In addition, an affidavit from the supervisor for the Civil Intake Division of the Clerk's office stated that Johnson filed suit and paid the necessary fees and thus took all the action required to have the citation issue, there was no other action she needed to take for citation to issue, and that there was nothing she did or failed to do which contributed to the delay.

2. *Taylor v. Thompson,* 4 S.W.3d 63, 65 (Tex. App.-Houston [1st Dist.] 1999, pet. denied); *see also Gant v. DeLeon,* 786 S.W.2d 259, 260 (Tex.1990).

3. *Allen v. Rushing,* 129 S.W.3d 226, 231 (Tex. App.-Texarkana 2004, no pet.); *see also Jackson v. J.R. Neatherlin Corp.,* 557 S.W.2d 327, 328 (Tex.Civ.App.-Houston [1st Dist.] 1977, writ ref'd n.r.e.).

4. *Allen,* 129 S.W.3d at 231; *Curtis v. Speck,* 130 S.W.2d 348, 352 (Tex.Civ.App.-Galveston 1939, writ ref'd).

5. *Allen,* 129 S.W.3d at 231; *see also Boyattia v. Hinojosa,* 18 S.W.3d 729, 734 (Tex.App.-Dallas 2000, pet. denied).

There is no evidence in the record that the delay in issuance was due in any part to Johnson's action or inaction or that any further action on her part could have caused citation to be issued or served sooner. Under these circumstances, the City's motion for summary judgment does not show a lack of diligence as a matter of law, and Johnson's first issue is sustained.

## Retaliation

Johnson's second issue contends that the evidence fails to show as a matter of law that no causal connection existed with regard to her retaliation claim between the protected activity and the termination of her employment.

Johnson brought this retaliation claim under section 21.055 of the Texas Commission on Human Rights Act ("TCHRA"). *See* Tex. Lab.Code Ann. § 21.055 (Vernon 1996). The purpose of the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964.[6] Tex. Lab.Code Ann. § 21.001(1) (Vernon 1996); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex.2001). Thus, analogous provisions of Title VII and the cases interpreting them guide our reading of the TCHRA. *Quantum Chem. Corp.*, 47 S.W.3d at 476.

In a retaliation case, the plaintiff must first make a *prima facie* showing that: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004). Here, it is undisputed that John- son engaged in the protected activity of filing a formal Equal Employment Opportunity Commission ("EEOC") complaint (the "complaint") alleging discrimination and that she was subsequently terminated from her employment.

For the "causal link" prong in a prima facie showing of retaliation, the legal standard is not as stringent as the "but for" standard. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir.2001). Therefore, a plaintiff need not prove that her protected activity was the only factor motivating the employer's decision and only a minimal showing is required. *Id.; Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 574 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Close timing between an employee's protected activity and the adverse action can provide the causal connection required for a *prima facie* case. *Id.*

In this case, Johnson was an employee in the City Health and Human Services Department (the "Health Department"). She filed the complaint on January 8, 2001, the Health Department received it on January 16, and the Director of the Health Department, Dr. Desvignes–Kendrick, sent Johnson a "Notice of Meeting Regarding Recommendation of Indefinite Suspension" (the "suspension notice") on January 18. Although ten days elapsed between Johnson sending the complaint and the issuance of this notice of suspension, the time between the City's receipt of the complaint and its issuance of the suspension notice was only two days. This time lapse is sufficient to show the causal connection element of a prima facie case.[7]

---

6. *See* 42 U.S.C.A.2000e–2000e–17 (West 2003).

7. The City argues that a plaintiff cannot establish a *prima facie* case of retaliation where the employer's investigation occurred before the employee engages in a protected activity. *See Zaffuto v. City of Hammond*, 308 F.3d 485, 493–94 (5th Cir.2002). However, in *Zaffuto*, both the events giving rise to Zaffuto's suspension and the investigative fact finding oc-

Having concluded that Johnson made a *prima facie* case, we look to whether the City produced evidence of a legitimate nonretaliatory purpose for the employment action. *Pineda,* 360 F.3d at 487. In this case, the City began investigating whether Johnson was Jennifer Smith's mother in December of 2000 before Johnson filed her complaint. The City composed a letter, which it presented to Johnson on December 22, 2000, inquiring whether (1) Smith was Johnson's daughter; (2) Johnson had notified her supervisor that Smith was her daughter; and (3) Johnson had removed herself "from any involvement regarding the hiring or any other personnel actions concerning" Smith. As summary judgment evidence to show a legitimate nonretaliatory reason for Johnson's termination, the City offered its termination letter (the "termination letter") dated March 2, 2001, stating that Johnson: (1) in early 1999, participated in processing an employment application for her daughter without disclosing the relationship to her supervisor; (2) in early and mid–2000, participated in a meeting concerning her daughter's salary, hours, benefits, and other personnel issues without disclosing their relationship to her immediate supervisor; and (3) failed to disclose her daughter as a relative employed by the City in August of 2000 when she herself applied for a Deputy Director position with the City. These actions allegedly violated a city ordinance and Mayor's policy concerning conflicts of interest.[8]

Ordinarily, if the employer meets its burden of showing a legitimate, nonretaliatory reason for termination, then the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory reason. *Id.* However, because this appeal involves a summary judgment, the burden remained on the City to prove a legitimate nonretaliatory reason as a matter of law. *See* Tex.R. Civ. P. 166a(c); *M.D. Anderson Hosp. and Tumor Inst. v. Willrich,* 28 S.W.3d 22, 24 (Tex.2000). Therefore, Johnson could defeat the summary judgment by either: (1) establishing that the City's summary judgment evidence failed to prove, as a matter of law, that the City's proffered reason was a legitimate, nonretaliatory reason for termination; or (2) offering evidence that otherwise raised a fact issue with regard to pretext. *M.D. Anderson,* 28 S.W.3d at 24.

curred before he engaged in the protected activity. *Id.*

**8.** In its suspension notice as well as its subsequent termination letter, the City stated that Johnson violated City of Houston Code of Ordinances section 14–183 and Mayor's Policy 104.00. Section 14–183 provides:

(a) An employee shall not: . . .

(3) Engage in any business or professional activity which tend to impair independence of judgment in the discharge of official duties.

(b) If an employee has a personal interest, direct or indirect, financial or otherwise, in any decision pending before such employee or a body or group of which the employee is a member, the employee shall not participate in the consideration of the matter. If such employee is in attendance at such meeting, he or she shall publicly disclose a conflict of interest to the body or group prior to any determination of the matter.

Mayor's Policy 104.00, as cited by the City, states:

Employment: Hiring of Relatives

(6) Unless in response to emergency situations involving matters of the police and fire department, it shall be considered a conflict of interest when an employee's job duties place the employee in a position of having to conduct official City business of any kind with a relative, be that a relative of a private citizen or another City worker. In any such case it shall be the responsibility of the affected employee to advise his/her immediate supervisor of the conflict of interest and request appropriate reassignment.

Summary judgment evidence in the form of Johnson's testimony at the *Loudermill* Meeting [9] (the meeting noticed in the suspension notice) indicates that she had informed her supervisors verbally in October of 1998 and by memorandum in May of 1999 of her familial relationship with Smith. Johnson presented further testimony and exhibits evidencing that: (1) at the Loudermill Meeting on January 24, the Health Department Director, Kendrick, who made the final recommendation on whether an employee is terminated, was aware that Johnson had filed the complaint because she had a copy of it and asked Johnson about the specifics in it at that meeting; (2) the complaint specifically complained of Kendrick allowing discrimination to occur against Johnson; [10] (3) the Health Department database of each employee who filed a discrimination complaint with the EEOC was maintained by Johnson's supervisor, Al Amaya, who first recommended Johnson's termination on January 16, 2001, the same day as the Health Department received her complaint; (4) Kendrick refused Johnson's request to postpone the Loudermill Meeting because she was on medical leave and insisted that Johnson or her counsel appear as scheduled on January 24, 2001; [11] (5) in the past, the Health Department had taken employees' supervisors out of a disciplinary role over the employees where an employee had a pending complaint against the supervisor, but Kendrick not only did not recuse herself from Johnson's Loudermill Meeting, she presided over it; (6) the City failed to follow Mayor's Policy 104.00 in terminating Johnson in that the issue regarding her familial relationship was never brought to the attention of the Director of Personnel nor did that Director recommend any course of action; [12] (7) Johnson had an excellent work record with no prior infractions, which the City's progressive discipline policy required to be considered in determining the severity of punishment; (8) the City failed to follow its progressive discipline policy, [13] which indicates that a

9. As part of the City's termination process, an employee is requested to appear at a *Loudermill* Meeting to discuss charges or allegations brought against the employee before a final recommendation regarding termination of employment is forwarded to the Mayor. The employee may be represented by counsel and present evidence at the meeting.

10. In particular, the charge alleged:

I. Since my hire date, December 3, 1993, I have been harassed by my co-workers and supervisors because of my national origin, sex, and age. Respondent is the City of Houston, Houston Department of Health and Human Services (HDHHS).

II. My supervisors, Dr. Desvignes Kendrick, Earl Travis, and Al Amaya have allowed the harassment to continue. On December 22, 2000, Daphne Sands, Senior Contract Compliance Division Manager, ushered me into a room with a witness and proceeded to interrogate me, acting as a department council [sic] and violating my rights to privacy.

III. I have also been denied promotion on July 19, 1997; October 25, 1997; August 15, 1998; May 22, 1999; August 30, 1999; and August 27, 2000. Lesser qualified employees were promoted over me.

IV. I believe that I have been discriminated against because of my national origin, Hispanic, and my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe that I have been discriminated against because of my age, in violation of the Age Discrimination in Employment Act of 1967, as amended.

11. Although Johnson had been granted medical leave for a heart condition, the City's affidavit indicates that she had submitted a doctor's note stating that she was able to return to work on January 12, 2001.

12. *See supra* note 5.

13. The applicable Employee Discipline Policy states:

It is the policy of the City of Houston to follow a course of progressive discipline as

less severe discipline should have been imposed because Johnson's alleged violations did not fall within the category warranting immediate termination; (9) other employees who were terminated for allegedly similar violations to those of Johnson also "had prior discipline, including numerous counseling records or written reprimands"; [14] and (10) the City failed to show that any other employee had ever been terminated or disciplined for failing to disclose a familial relationship with another employee.

Because the foregoing evidence is sufficient to raise a fact issue on whether the City's termination of Johnson was motivated by the filing of her complaint, we sustain Johnson's second issue, reverse the judgment of the trial court, and remand this case to the trial court for further proceedings.[15]

appropriate when an employee violates City rules, regulations, policies, or those actions deemed unethical or inappropriate to employee conduct. Employees shall be subject to disciplinary action as set forth in the guidelines below.

14. Johnson presented evidence of two such employees, one of whom was terminated for violating a conflict of interest policy only after he was ordered by Kendrick to recuse himself from further meetings and failed to do so, and after he was "counseled" twice.

15. In light of our disposition in this case, we need not address Johnson's third issue, challenging the exclusion of evidence; and we overrule as moot both: (1) Johnson's Motion for Leave to Supplement and/or Request that this Court Take Judicial Notice of an affidavit by Mayor Lee Brown filed in another suit involving the City of Houston; and (2) the City's Motion to Strike and Response to Johnson's Motion for Leave to Supplement and/or Request that this Court take Judicial Notice of the mayor's affidavit as well as to take judicial notice of City of Houston Ordinance § 14–182.