# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00788-CV

**Michael A. Acosta, Appellant**

**v.**

**City of Austin, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353 JUDICIAL DISTRICT
### NO. D-1-GN-07-000500, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

On this record and applying the correct standard of review, this employment retaliation case is a matter for the jury. Because Mr. Acosta established a prima facie case of retaliation and issues of material fact concerning the City's proffered reasons for its adverse employment actions are disputed, summary judgment was improper. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000); *Johnson v. City of Houston*, 203 S.W.3d 7, 12 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Texas Dep't of Crim. Justice v. Cooke*, 149 S.W.3d 700, 705 (Tex. App.—Austin 2004, no pet.). I would conclude that the district court erred by weighing the evidence of retaliation, resolving issues of disputed fact, and ruling as a matter of law that Acosta did not suffer retaliation.[1]

---

[1] Acosta brought his claims of retaliation pursuant to the labor code. *See* Tex. Lab. Code Ann. § 21.055 (West 2006). Section 21.055 of the labor code provides that an "employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a

I therefore concur in the majority's opinion to the extent the majority concludes that Acosta timely filed suit against his former employer, the City, and respectfully dissent to the remainder of the opinion affirming the summary judgment in favor of the City on Acosta's claims of retaliation.

In reviewing a summary judgment, we "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (citation omitted); *see also* Tex. R. Civ. P. 166a(c). We consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Mayes,* 236 S.W.3d at 756; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Departing from a correct application of the standard of review, the majority holds that Acosta "failed to raise a genuine issue of material fact regarding whether the City's articulated non-retaliatory reasons" for the adverse employment actions challenged by Acosta "were pretextual."

The majority departs from the summary judgment standard by concluding that, even if Acosta established a prima facie case of retaliation,[2] the City's burden to show a legitimate,

person who, under this chapter . . . opposes a discriminatory practice." *Id.*

[2] An employee establishes a prima face case of retaliation by showing that he engaged in protected activity, an adverse employment action occurred, and a causal link existed between the protected activity and the adverse action. *Johnson v. City of Houston*, 203 S.W.3d 7, 11 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)). In construing Acosta's petition, the majority unduly constricts Acosta's claims of retaliation. The majority states that Acosta alleged that the City's actions were taken in retaliation for "his complaints that his pay was lower than that of non-Hispanic employees with less experience and tenure." In his pleadings, however, Acosta additionally alleged retaliation for his "objections to his written reprimand, [his] resignation letter citing unfair treatment, and/or [his] charge of discrimination filed in June 2006."

2

non-retaliatory reason for the adverse employment actions is "one of production and not persuasion." The majority confuses an employer's burden to defeat the legal presumption of retaliation that arises when an employee establishes a prima facie case of retaliation with an employer's burden when the employer is seeking summary judgment on a claim of retaliation based on articulated, non-retaliatory reasons for the challenged adverse employment actions.

Once an employee establishes a prima facie case, there is a legal presumption that the employer's adverse actions were retaliatory. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000). The employer may defeat this legal presumption by meeting its "burden of production" concerning non-retaliatory reasons for the adverse employment action. *Id*. (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993)). An employer meets its "burden of production" by introducing "evidence which, *taken as true*, would *permit* the conclusion that there was a [non-retaliatory] reason for the adverse action." *Hicks*, 509 U.S. at 509 (emphasis in original). In contrast, an employer seeking summary judgment based upon an alleged legitimate, non-retaliatory reason for an adverse employment action, must prove its reason as a matter of law to be entitled to summary judgment on an employee's claims of retaliation. *See Willrich*, 28 S.W.3d at 24 ("Because this is a summary judgment motion, the burden remained on [the employer] under Rule 166a(c) to prove as a matter of law a legitimate, nondiscriminatory reason for [the employee]'s termination."); *Johnson*, 203 S.W.3d at 12.[3]

---

[3] Although the City also sought no-evidence summary judgment, the parties agree that the City's claim that it had a legitimate, non-retaliatory reason for the adverse employment actions against Acosta is an affirmative defense. *See* Tex. R. Civ. P. 94, 166a(i).

That an employer satisfied its burden of production to defeat the legal presumption of retaliation, then, does not alter the employer's burden as the movant seeking summary judgment on the affirmative defense of a non-retaliatory reason for its action. As our sister court in *Johnson* explained,

> Ordinarily, if the employer meets its burden of showing a legitimate, nonretaliatory reason for termination, then the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory reason. . . . However, because this appeal involves a summary judgment, the burden remained on the [employer] to prove a legitimate nonretaliatory reason as a matter of law. . . . Therefore, [the employee] could defeat the summary judgment by either: (1) establishing that the [employer]'s summary judgment evidence failed to prove, as a matter of law, that the [employer]'s proffered reason was a legitimate, nonretaliatory reason for termination; or (2) offering evidence that otherwise raised a fact issue with regard to pretext.

203 S.W.3d at 12 (citations omitted); *see also Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 728 (Tex. App.—Fort Worth 2006, no pet.). Further, the evidence concerning the employer's reasons for its actions is viewed in the light most favorable to the employee, not "taken as true" as such evidence is in the legal presumption determination. *See Hicks*, 509 U.S. at 509; *Willrich*, 28 S.W.3d at 24; *Johnson*, 203 S.W.3d at 12.

When an employee has established a prima facie case of retaliation, probative evidence that an employer's articulated reasons for adverse actions are false may create a fact issue precluding summary judgment. *See Reeves*, 530 U.S. at 142-43 (citing *Hicks*, 509 U.S. at 509); *Bowen v. El Paso Elec. Co.*, 49 S.W.3d 902, 910 (Tex. App.—El Paso 2001, pet. denied) (quoting *Reeves*, 530 U.S. at 148) ( "'[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that

4

the employer unlawfully discriminated.'"). Whether summary judgment is appropriate based upon an employer's articulated reasons for adverse employment actions depends on numerous factors, including the "'strength of the [employee]'s prima facie case'" and the "'probative value of the proof that the employer's explanation is false.'" *Little v. Texas Dep't of Crim. Justice*, 177 S.W.3d 624, 632 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (quoting *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)).

The City's summary judgment motion rested on adducing evidence of its affirmative defense that it had legitimate, non-retaliatory reasons for each of the adverse employment actions that Acosta challenged.[4] The adverse employment actions challenged by Acosta were: (i) the City issued a written reprimand against him in January 2006, (ii) the City terminated his employment by improperly applying its policy that reserved an employee's right to withdraw a resignation within 48 hours, and (iii) the City failed to rehire him. In response to the City's motion for summary judgment, Acosta presented evidence in response to each of the City's articulated reasons for taking the challenged actions. When we view this evidence in the light most favorable to Acosta, the evidence raises genuine issues of material fact whether the City's articulated reasons for each of the challenged adverse employment actions were false and a pretext for its real reason of retaliation. *See* Tex. R. Civ. P. 166a(c); *Reeves*, 530 U.S. at 142-43, 148. I limit my analysis to the termination of Acosta's employment because it exemplifies the plethora of fact questions here.[5]

---

[4] The City also moved for summary judgment based upon the timeliness of Acosta's suit and on other affirmative defenses that were applicable to Acosta's discrimination claims but not to his claims of retaliation. They included the same actor and same national origin defenses.

[5] The parties presented conflicting affidavits and extensive deposition excerpts from supervisors and employees at the plant concerning each of the adverse employment actions.

The evidence concerning the termination of Acosta's employment raises genuine issues of material fact as to the contours of the City's resignation policy, whether the City correctly described its policy, and whether it properly applied the policy to Acosta. The City's resignation policy states:

> To resign in good standing, an employee shall submit his/her resignation in writing to his/her Department Director at least ten working days before the effective date of resignation. Any employee submitting a resignation has 48 hours within which to reconsider and reserves the right to withdraw the resignation within this time limit. An employee who gives less than ten working days notice may forfeit terminal pay.

The evidence showed that Acosta placed resignation letters in the boxes of the plant manager and plant superintendent at the end of his shift on April 30, 2006, a Sunday. In his affidavit, Acosta averred that his father passed away in April 2006 and that he "was very depressed about his death and combined with the way I was being mistreated by [the superintendent] at work, I felt like I had to get away from there." In the letters, Acosta stated that he was giving notice that he would be "vacating" his position on May 9, 2006, and included among his reasons that he did not feel that management treated him "fairly." He later sought to withdraw the resignation in accordance with the City's 48-hour policy, but the superintendent did not accept his attempted withdrawal.

The policy is silent concerning when the 48-hour time period begins to run, and the parties presented conflicting evidence on this issue. In its motion for summary judgment, the City contended that the 48-hour time period had expired when Acosta attempted to withdraw his

---

Acosta's evidence in response to the City's summary judgment also included his positive performance evaluations from the City.

resignation on Wednesday morning and, in any event, the City had discretion to immediately accept

his resignation. The City presented evidence that the time period began to run on Sunday evening

when Acosta placed the letters in the boxes at the end of his shift. Accepting the City's evidence as

true, the period expired on Tuesday evening. Acosta presented contrary evidence that the City's

policy was that the time period began to run when management actually received his letter of

resignation and that the superintendent received and read his letter sometime after 7:30 a.m. on

Monday morning.[6] Accepting Acosta's evidence as true, the period for withdrawing his resignation

expired at the earliest sometime after 7:30 a.m. on Wednesday morning.

---

[6] During his deposition, the superintendent testified that he did not think the plant manager was there Monday morning. In his affidavit, Acosta averred:

> After I submitted my resignation letter, I had second thoughts and decided to withdraw my resignation. I called Austin HR . . . on Tuesday early afternoon to ask about the policy related to withdrawing resignations.

Based upon the conversation, Acosta averred that he was told he "had until Wednesday morning to withdraw [his] resignation." Acosta also provided the affidavit of Carol Ann Guthrie who was a union representative with twenty years of experience concerning the City's "policies associated with response deadlines related to all manner of issues to include . . . resignations." Guthrie averred:

> I am personally and professionally aware that established practice by the City of Austin with regard to when a time limit begins to run for . . . the City . . . to take action is from the time of the receipt of the document; or, in this case, the resignation letter. As a practical example, if an employee submits a resignation letter by US Mail, the 48 hours begins to run not from the date of the letter or date of the postmark, but the date that the letter was received by the City management representative. Similarly, if the employee submits his resignation letter by placing it in the City management representative's box at work, the 48 hours would begin to run from the time the management representative actually received the letter by removing it from the box and reading it.

During his deposition, the superintendent testified concerning Wednesday morning:

Q:      So it was a normal workday. You got there at 7:30?

A:      Yes.

Q:      Okay. And what happened? Did you see Mr. Acosta?

A:      Yeah. I came through the control room like I do every morning and check and see how things are going with the supervisor. I believe Mr. Acosta was working on the control board that day. He had asked me if he could speak to me about something. And I said I—I think I said—I'm not a hundred percent sure, exactly, what I said, but I think I said I had some meetings and that I would catch up with him as soon as my meetings were over.

In his affidavit, Acosta averred:

I approached [the superintendent] Wednesday morning in the Control Room upon [the superintendent's] arrival and told him that I needed to speak to him about my resignation. [The superintendent] cut me off, telling me that he could not meet with me until have [sic] some meetings that morning. I went to [the superintendent] before 10:00 to again ask to speak with him, but he again put me off until 11:00. . . .

I went to [the superintendent's] office at 11:00 and I was joined there by [the superintendent and two other people]. Again, [the superintendent] cut me off when I tried to speak to him to tell him I wanted to withdraw my resignation. [He] instead told me that he was accepting my resignation. I then told him that I was trying to withdraw my resignation, but he would not allow me to withdraw it. [He] did not make any mention that the 48 hour period had expired the night before. [He] did not make any mention of the 48 hour period.

This evidence supports that a reasonable fact finder could conclude that Acosta sought to withdraw his resignation by speaking to the superintendent before the 48-hour time period expired.

Although the parties presented conflicting evidence when the forty-eight hour time period began to run and when it expired, the majority weighs the evidence and concludes that Acosta

8

did not timely withdraw his resignation. The majority comes to the conclusion that there is "no dispute that Acosta did not withdraw his resignation within 48 hours" and further concludes that "there is no evidence that Acosta communicated his desire to exercise such relief within the 48-hour period or that he was in any way prevented from doing so." This issue was sharply disputed. The majority discounts Acosta's unsuccessful attempts to withdraw his resignation during the 48-hour time period by concluding that Acosta could have telephoned, e-mailed, or placed a withdrawal notice in the superintendent's box during the relevant time period. This example is only one of several that demonstrates that the manner in which applying the wrong standard of review undermines the court's analysis. When we view the evidence in the light most favorable to Acosta, the evidence that Acosta attempted to speak with the superintendent to withdraw his resignation before the 48-hour time period had expired raises genuine issues of material fact concerning the contours of the policy and the City's application of the policy to Acosta. *See Mayes*, 236 S.W.3d at 755-56.

The parties also presented other conflicting evidence concerning the City's application of its policy to Acosta.[7] The City presented evidence that the policy gave the City

---

[7] I disagree with the majority's conclusion that "the City's possible motivation is not relevant to the analysis." Probative evidence that an employer's stated reasons for its actions are false may raise a fact question with regard to pretext. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (noting that "proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive"); *Nasti v. CIBA Specialty Chems.*, 492 S.W.3d 589, 594 (5th Cir. 2007) ("The pretext inquiry focuses on the authenticity of the employer's proffered reason."); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) ("A plaintiff may establish pretext . . . by showing that the employer's proffered explanation is false or 'unworthy of credence.'") (quoting *Reeves*, 530 U.S. at 143; *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 220 (5th Cir. 2001)).

discretion to accept a resignation immediately when it was in the "best interest" of the City and that is what happened here. The City presented evidence that it "processed" Acosta's resignation on Monday and accepted it immediately. But if the City accepted his resignation immediately, why was Acosta working on Wednesday until the meeting with the superintendent? Further, the superintendent testified during his deposition that the policy allowing the City to accept a resignation immediately applied only after the 48-hour time period had expired. The superintendent testified:

A: I could accept his resignation, yes, effective immediately.

Q: Okay. And when you say "effective immediately," did that mean Monday morning?

A: No. That meant after he—he's allowed 48 hours to rescind his resignation.

The superintendent also testified during his deposition that he felt it was in the "best interest of the company" "to let [Acosta] go right away" "based on what [Acosta] wrote in his resignation letter" that he was "mistreated and unhappy" because a "power plant is obviously not a place where—you know, it could be a dangerous place if . . . your mind is not set on what—concentrating on work. And I didn't feel that based on his letter that his mindset would be safe enough to have him around the workplace." In his affidavit, the superintendent's stated reasons for not allowing Acosta to withdraw his resignation included that Acosta's letter of resignation was a "burns his bridges" letter "by accusing management of lies and slander" and that the safety of the plant was "paramount." Yet he also testified that he allowed Acosta to work for several hours on Wednesday morning before meeting with him "[b]ecause I wasn't available at that time to talk with him and I needed to do my other duties first and I was going to fit him in when I had time."

10

In addition to his inconsistent testimony concerning the City's decision to immediately accept Acosta's resignation, other portions of the superintendent's testimony conflicted with the evidence. For example, the superintendent testified that when Acosta approached him on Wednesday morning that Acosta only asked if "he could speak to me about something." He denied that Acosta said that he wanted to talk about his resignation. This testimony directly conflicted with Acosta's testimony that he told the superintendent that he wanted to speak to him about his resignation. When further asked during his deposition why he did not accept Acosta's withdrawal of his resignation letter, the superintendent answered:

> Because I—based on his resignation letter, I just felt that he wasn't somebody that was happy at the plant, didn't trust management for some reason and wasn't somebody that we wanted in the workplace.

He did not specify the expiration of the 48-hour time period or his safety concerns.[8] *See Nasti v. CIBA Specialty Chems.*, 492 S.W.3d 589, 594 (5th Cir. 2007) ("A court may infer pretext where [an employer] has provided inconsistent or conflicting explanations for its conduct.")

Given the conflicting testimony, the questions of whether the City's articulated reasons for its challenged actions were false and whether the City's actions were motivated by something other than those reasons turn on findings of credibility, a traditional function of the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the

---

[8] There was also evidence that the superintendent gave Acosta a negative review, including that Acosta was a "troublemaker," which testimony conflicted with the testimony from other supervisors and the positive performance evaluations that Acosta received during his employment with the City.

11

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.8 (1981) (recognizing the nature of the "elusive factual question of intentional discrimination"); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (credibility determinations, weighing of the evidence, and drawing reasonable inferences from the facts are jury functions); *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989) (when credibility of affiant likely to be dispositive in resolution of case, summary judgment is not appropriate); *see also Reeves*, 530 U.S. at 141 (citation omitted) (fact finder in discrimination cases faces questions that are "both sensitive and difficult" and "there will seldom be 'eyewitness' testimony as to the employer's mental processes").

When genuine issues of fact exist, summary judgment is not appropriate. My disagreement with the majority on the facts and the inferences that should or can be drawn from the facts—as adduced in this case—illustrates that a fact finder needs to decide whether the City's adverse employment actions against Acosta were in retaliation for his protected activities. I would conclude that the record contains ample evidence that—on this record—a reasonable fact finder could find that the City's articulated reasons for its actions were pretextual and false and, therefore, that the City failed to conclusively prove that it had legitimate, non-retaliatory reasons for its actions to be entitled to summary judgment. *See Willrich*, 28 S.W.3d at 24; *Cooke*, 149 S.W.3d at 705. I would reverse the trial court's summary judgment in favor of the City and remand for a trial on the merits or other proceedings.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Filed:   June 30, 2010

13